# Wytheville

## J. Scott Parrish v. J. T. Wightman and L. B. Stainback, Partners, etc.

June 6, 1945.

Record No. 2923.

Present, All the Justices.

The opinion states the case.

*Christian, Barton, Parker & Boyd* and *Miles Poindexter, II,* for the plaintiff in error.

*Andrew J. Ellis,* for the defendants in error.

GREGORY, J., delivered the opinion of the court.

The defendant in the court below, J. Scott Parrish, unsuccessfully defended an action brought against him by John T. Wightman and L. B. Stainback, partners trading under the firm name of L. W. McVeigh Company, for real estate commission on the sale of a farm. A jury was waived and the rights of the parties were submitted to the judge of the court who rendered a judgment against Mr. Parrish and in favor of the real estate brokers.

Mr. Parrish, who will be referred to as the defendant, was the owner of a farm of undetermined acreage lying within the corporate limits of Richmond. He verbally listed this farm for sale with the L. W. McVeigh Company, who will be hereinafter referred to as the brokers, at the price of $350 per acre, and at the time he agreed to pay the brokers a commission of five per centum on the purchase price if they should secure a purchaser. Under the terms, the purchaser was required to make a deposit in cash of $1,000. Very soon thereafter F. O. Brooks, representing Brooks & Son, Incorporated, and being its president, made an offer for the said land, at the price of $350 per acre. Brooks &

Son, Inc., was solvent and ready, willing and able to purchase on the terms prescribed. A cash deposit of $1,000, as required, was made, and the defendant was immediately notified. The parties met to close the transaction. The attorney for the defendant insisted that the cash payment should be increased from $1,000 to $5,000. There were other changes in the terms, all of which were agreed upon. Finally a contract bearing date March 6, 1942, between the defendant and Brooks & Son, Inc., was entered into. By the terms of this contract the purchaser agreed to purchase the property at $350 per acre, $5,000 to be paid in cash, and $20,000 to be paid in sixty days, and the balance, with four per cent interest, to be paid in twelve months. A survey was made and it disclosed that the farm contained 128.26 acres, thus making the entire purchase price $44,891. The contract, as finally entered into, contained in clause No. 7, this provision: "The vendor agrees to pay to L. W. McVeigh, Incorporated, a commission of 5% upon the purchase price as, when and if the said purchase price is paid in cash and a deed of conveyance or deeds of conveyance made to and accepted by the purchaser".

Before the second payment of $20,000 became due on April 14, 1942, Brooks & Son, Inc., sold its interest in the contract to Mr. W. J. Levitt for $11,400, or for a net profit of $6,400. If this sale had not been made to Mr. Levitt, Brooks & Son, Inc., would have completed its purchase. Before purchasing the interest of Brooks & Son, Inc., Mr. Levitt had negotiated with the defendant, and the defendant agreed to sell Mr. Levitt the property if he could purchase the Brooks interest. After Mr. Levitt purchased the Brooks interest the defendant entered into another contract of sale with Mr. Levitt on April 17, 1942. Under this contract Mr. Levitt agreed to pay an additional $5,000 in cash to the defendant and to pay the entire balance of the purchase price in cash on or before July 14, 1942, and the defendant agreed, upon the receipt of such balance, to convey the farm to Mr. Levitt or his assigns or nominee.

It is noted that the defendant received twice as much in cash and the promise of payment of the balance at an earlier time under this contract than he would have received under the contract with Brooks & Son, Inc., and it is conceded that Mr. Levitt was stronger financially than the Brooks corporation. Thus it appears that the defendant, by making the contract with Mr. Levitt, bettered his position. The real estate brokers at the time knew nothing of the sale by the Brooks corporation of its rights to Mr. Levitt nor did they know of the new contract between the defendant and Mr. Levitt. On April 22, 1942, the defendant advised the brokers that Mr. Levitt had become the purchaser.

Mr. Levitt declined to pay the defendant the balance of the purchase price of the farm, amounting to $34,891, when it became due on July 14, 1942. The defendant then instituted an action at law against him for this balance. He did not enter any suit or action against Brooks & Son, Inc., and never tendered it a deed. The action brought against Mr. Levitt was not prosecuted to a conclusion but was compromised and dismissed.

The compromise settlement provided that Mr. Levitt was to pay the defendant an additional sum of $11,945.50 in cash, making a total of $21,945 which the defendant received, and he agreed to execute a quitclaim deed releasing the farm to the defendant. Brooks & Son, Inc., also agreed to execute a quitclaim deed to the farm. This settlement was made without the consent or knowledge of the real estate brokers. The result of the transaction has been that Brooks & Son, Inc., has received a net profit of $6,400, and the defendant has received in cash $21,945.50, and still owns his farm. The uncontradicted evidence is that at the time of the settlement in November, 1942, and at the time of the trial in May, 1944, the farm was worth at least $38,468.

The defendant has paid the real estate brokers five per cent commission on the first $10,000, which amounted to $500, and the judgment here is the equivalent of five per

cent on the balance of the agreed purchase price of $34,891, which is computed to be $1,744.55.

The assignments of error raise a number of interesting questions, but they are not necessarily determinative of the case.

The defendant's main reliance is in the fact that the condition in clause No. 7 of the contract was never fulfilled; that the entire purchase price agreed to be paid by Brooks & Son, Inc., to the defendant was not paid and that this was a condition precedent to the brokers' right to commission.

On the other hand the answer of the brokers to this position is that while it may be true that their commission would not be earned until Brooks & Son, Inc., paid the entire purchase price, yet their failure in this respect was due to the interference of the defendant who prevented the performance of that condition by making a new contract with Mr. Levitt, a new vendee; that he thereby effectively prevented himself and Brooks & Son, Inc., from performing their contract, which would have been done if the defendant had not accepted Mr. Levitt as a vendee. They therefore maintain that the defendant having thus prevented the performance of the Brooks contract he now will not be allowed to take advantage of the non-performance of the condition.

It may be fairly said that the real estate brokers, while not parties to the contract between Brooks & Son, Inc., and Mr. Levitt, or to the contract between the defendant and Mr. Levitt, yet by their acquiescence they have agreed to the terms embodied in the seventh clause of the contract between the defendant and Brooks & Son, Inc., dated March 6, 1942, namely, that the vendor agrees to pay to L. W. McVeigh, Inc., a commission of five per cent upon the purchase price as, when and if said purchase price is paid in cash and the deed of conveyance or deeds of conveyance made to and accepted by the purchaser. The changes in relation to the payment of the brokers' commission were agreed to by the brokers, at least impliedly. This seventh

clause of the contract made the payment of the commission conditional, the condition being that the entire purchase price must be first paid in cash. Generally such a condition must occur before the broker earns his commission. ·

In the case at bar the brokers found a solvent purchaser in Brooks & Son, Inc., and that purchaser became bound to purchase the real estate when it, through its president, signed the contract. All that remained to be done in order to entitle the brokers to their commission was that the purchaser pay the purchase price and accept the deed. This the purchaser would have done but it sold its rights in the contract to Mr. Levitt. The defendant was entirely satisfied to accept Mr. Levitt as a purchaser in the place of Brooks & Son, Inc., because Mr. Levitt was stronger financially, and also because he had agreed to pay the unpaid purchase price at an earlier date than could have been required of Brooks & Son, Inc., under its contract. The defendant made an entirely new contract with Mr. Levitt, agreeing to sell him the land under different terms more advantageous to him, the defendant.

It is true that the defendant, in his contract with Mr. Levitt, attempted to hold Brooks & Son, Inc., on its contract, but that corporation was not a party to the contract of the defendant with Mr. Levitt and, of course, was not bound by that contract. The ultimate result was that Brooks & Son, Inc., was released by the defendant as a purchaser and Mr. Levitt became a new purchaser under a new contract with the defendant. Brooks & Son, Inc., after selling out its interest in the contract to Mr. Levitt, could not thereafter have required a deed from the defendant. The defendant having made a new contract with Mr. Levitt, could not thereafter have required payment of Brooks & Son, Inc. The defendant could not have conveyed to Brooks & Son, Inc., because he had already agreed to convey to Mr. Levitt. Mr. Levitt became the accepted purchaser of the land instead of Brooks & Son, Inc. When Brooks & Son, Inc., sold its interest in the contract to Mr.

Levitt and when the defendant made a new contract of sale with Mr. Levitt they thereby prevented the performance of the contract which the defendant had made with Brooks & Son, Inc., and prevented the performance of the condition which would have entitled the brokers to their commission.

The defendant actively engaged in a course of conduct which rendered it beyond the power of Brooks & Son, Inc., to pay to him the entire purchase price in cash. His conduct was such as to release Brooks & Son, Inc., from the performance of its obligation.

·The general principle applicable here is clearly stated in *Amies* v. *Wesnofske*, 255 N. Y. 156, 174 N. E. 436, 73 A. L. R. 918, a case relied upon by both sides. There it is said:

"The question remains whether the condition qualifying the promise, that it should become performable only upon 'the closing of title,' has remained unfulfilled, because of any fault upon the part of the defendants. If a promisor himself is the cause of the failure of performance of a condition upon which his own liability depends, he cannot take advantage of the failure. Williston on Contracts, Vol. 2, section 677; *Dolan* v. *Rodgers*, 149 N. Y. 489, 44 N. E. 167; *In re Casualty Co.*, 250 N. Y. 410, 419, 165 N. E. 829. 'It is a well settled and salutary rule that a party cannot insist upon a condition precedent, when its non-performance has been caused by himself.' *Young* v. *Hunter*, 6 N. Y. 203, 207. 'It is as effective an excuse of performance of a condition that the promisor has hindered performance as that he has actually prevented it.' Williston on Contracts, Vol. 2, section 677. The American Law Institute, in its 'Restatement of the Law of Contracts' (Tentative Draft No. 6, section 289), under the heading 'Excuse of Condition by Prevention or Hindrance,' says: 'If a promisor prevents or hinders the occurrence of a condition, or the performance of a return promise, and the condition would have occurred or the performance of the return promise. been rendered

except for such prevention or hindrance, the condition is excused, and the actual or threatened non-performance of the return promise does not discharge the promisor's duty.' The doctrine is purely one of waiver; active conduct of the conditional promisor, preventing or hindering the fulfillment of the condition, eliminates it and makes the promise absolute."

See also 12 Am. Jur., Contracts, section 381, and annotation in 73 A. L. R., at page 926.

In 17 C. J. S., Contracts, section 468, is found this clear statement of the rule:

"Where a contract is performable on the occurrence of a future event there is an implied agreement that the promisor will place no obstacle in the way of the happening of such event, particularly where it is dependent in whole or in part on his own act; and, where he prevents the fulfillment of a condition precedent or its performance by the adverse party, he cannot rely on such condition to defeat his liability."

We are of the opinion that the judgment of the court below is clearly right and should be affirmed.

*Affirmed.*