**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MOORE BROTHERS COMPANY,
Plaintiff-Appellee,

v.

BROWN & ROOT, INCORPORATED,
Defendant-Appellant,

and

HIGHLANDS INSURANCE COMPANY,
Defendant,

and

TOLL ROAD INVESTORS PARTNERSHIP
II, L.P.,
Third Party Defendant.

No. 99-1232

MOORE BROTHERS COMPANY,
Plaintiff-Appellee,

v.

HIGHLANDS INSURANCE COMPANY,
Defendant-Appellant,

and

BROWN & ROOT, INCORPORATED,
Defendant,

and

TOLL ROAD INVESTORS PARTNERSHIP
II, L.P.,
Third Party Defendant.

No. 99-1233

MOORE BROTHERS COMPANY,
Plaintiff-Appellant,

v.

BROWN & ROOT, INCORPORATED;
HIGHLANDS INSURANCE COMPANY,

Defendants-Appellees,

and

TOLL ROAD INVESTORS PARTNERSHIP
II, L.P.,
Third Party Defendant.

No. 99-1234

LANE CONSTRUCTION CORPORATION,
Plaintiff-Appellee,

v.

BROWN & ROOT, INCORPORATED,
Defendant-Appellant,

and

HIGHLANDS INSURANCE COMPANY,

Defendant,

and

TOLL ROAD INVESTORS PARTNERSHIP
II, L.P.; STATE STREET BANK &
TRUST COMPANYOF CONNECTICUT,
NA; BANQUE NATIONALE DE PARIS,
New York Branch,
Third Party Defendants.

No. 99-1235

2

LANE CONSTRUCTION CORPORATION,
Plaintiff-Appellee,

v.

HIGHLANDS INSURANCE COMPANY,
Defendant-Appellant,

and

BROWN & ROOT, INCORPORATED,

No. 99-1236

Defendant,

and

TOLL ROAD INVESTORS PARTNERSHIP
II, L.P.; STATE STREET BANK &
TRUST COMPANYOF CONNECTICUT,
NA; BANQUE NATIONALE DE PARIS,
New York Branch,
Third Party Defendants.

LANE CONSTRUCTION CORPORATION,
Plaintiff-Appellant,

v.

BROWN & ROOT, INCORPORATED;
HIGHLANDS INSURANCE COMPANY,
Defendants-Appellees,

No. 99-1237

and

TOLL ROAD INVESTORS PARTNERSHIP
II, L.P.; STATE STREET BANK &
TRUST COMPANYOF CONNECTICUT,
NA; BANQUE NATIONALE DE PARIS,
New York Branch,
Third Party Defendants.

3

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis III, District Judge.
(CA-96-1809-A, CA-96-1810-A)

Argued: December 1, 1999

Decided: March 30, 2000

Before MURNAGHAN and WILKINS, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

_____

Affirmed in part, reversed in part, and remanded by published opin-
ion. Judge Murnaghan wrote the opinion, in which Senior Judge
Hamilton joined. Judge Wilkins wrote an opinion concurring in part
and dissenting in part.

_____

**COUNSEL**

**ARGUED:** Daniel J. Kraftson, SHUMATE, KRAFTSON & SPAR-
ROW, P.C., Reston, Virginia, for Appellants. Robert Emmett Scully,
Jr., REES, BROOME & DIAZ, P.C., Vienna, Virginia, for Appellees.
**ON BRIEF:** Charles L. Shumate, SHUMATE, KRAFTSON &
SPARROW, P.C., Reston, Virginia; Thomas M. Brownell, HOL-
LAND & KNIGHT, L.L.P., Falls Church, Virginia, for Appellants.
Raymond J. Diaz, Joseph F. Jackson, REES, BROOME & DIAZ,
P.C., Vienna, Virginia, for Appellees.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

This case arises out of the construction of the Dulles Toll Road
Extension, a privately owned and operated toll road connecting Dulles
Airport and Leesburg, Virginia. Two issues are raised on appeal: first,

4

whether a surety may rely on a "pay when paid" clause in a subcontract as a defense to liability for payment on a bond; and second, whether a general contractor may rely on the non-occurrence of a valid "pay when paid" condition precedent in the subcontract as a defense to liability where the general contractor was partly responsible for the failure of the condition precedent. Because we answer both questions in the negative, we affirm the orders of the district court in part, reverse in part, and remand for further proceedings.

I.

The Dulles Toll Road Extension ("DTRE") is a fourteen mile long private toll road between Dulles Airport and Leesburg, Virginia. It was built and is operated by the Toll Road Investors Partnership II ("TRIP"). In 1993, TRIP (the "Owners") awarded the general construction contract to Brown & Root, Inc. In addition to its role as general contractor, Brown & Root was also an equity partner in TRIP.

Brown & Root in turn entered into subcontracts with Moore Brothers Co., Inc. and The Lane Construction Corp., the plaintiffs, to build parts of the road. Highlands Insurance Co. issued a contract payment bond as surety.

The subcontracts between Brown & Root and plaintiffs contain a general "pay when paid" clause:

> Notwithstanding any other provision hereof, payment by Owner to General Contractor is a condition precedent to any obligation of General Contractor to make payment hereunder; General Contractor shall have no obligation to make payment to Subcontractor for any portion of the Sublet Work for which General Contractor has not received payment from the Owner.

The contract payment bond issued by Highlands states in part:

> The above named Principal [Brown & Root] and Surety [Highlands] hereby jointly and severally agree with the Obligees that every claimant herein defined who has not

5

been paid in full before the expiration of a period of 90 days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on the bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon.

The prime construction contract contains provisions for additional payment if the Owners order substantial design changes that constitute a "change in scope" of the project, including a provision for binding arbitration. The early drafts of the contract also contained several specific design change illustrations to clarify the type of situation in which Brown & Root would be entitled to additional payment from the Owners.

Changing the thickness of the pavement sub-base material was included in the examples of design changes that would warrant additional payment. Changing the thickness of the pavement sub-base is a common and costly design change in highway construction, and throughout the development of the DTRE project there was some uncertainty about the adequacy of the initial pavement design and the thickness of the sub-base material that would be required by the Virginia Department of Transportation. As early as 1991 the Brown & Root project manager knew that the initial pavement design for the DTRE was on the "marginal end."

The lenders who were financing the highway project, however, wanted to contain the costs of the project and insisted on a "high degree of certainty" in assessing the total project costs. They were hesitant to agree to a contract that contained specific illustrations of design changes that would warrant additional payment. The Owners and Brown & Root, therefore, agreed in July of 1993 to delete the specific illustrations of design changes from the prime contract to placate the lenders. At the same time, the Owners and Brown & Root assured the lenders that no substantial changes in the work, as defined in the base contract, were anticipated.

After deleting the design change illustrations from the prime contract, the Owners and Brown & Root incorporated the illustrations

6

into a "Policy and Procedures" letter, the existence of which was not revealed to the lenders. In essence, the Owners and Brown & Root reached a side agreement concerning additional "change in scope" illustrations and then concealed that agreement from the lenders by placing it in a side letter, while leaving it out of the prime contract. Brown & Root did not tell the subcontractors that the design change illustrations and the potential need for additional"change in scope" work were hidden from, and therefore not adequately funded by, the lenders.

When the need for a thicker pavement sub-base became apparent, Brown & Root ordered the subcontractors to proceed with the additional work. Under the terms of the "pay when paid" condition precedent in the subcontract, Brown & Root knew that if payment for the additional work were not forthcoming from TRIP, it was the subcontractors who would assume the bulk of the loss.

After the additional work was completed, both Brown & Root and the subcontractors sought arbitration of their claim for additional payment from the Owners. The arbitrator concluded that the additional work did constitute a "change in scope" and therefore ordered the Owners to make payments beyond the base contract price. The arbitrator ordered TRIP to pay Brown & Root, who was subsequently required to pay the subcontractors.

Because the lenders were not made aware of the significant likelihood that additional work would be necessary, financing was never arranged to cover payment for additional "change in scope" work. TRIP, therefore, did not have the funds to pay Brown & Root the amount of the arbitration award. Brown & Root, as a result, claims that it is not obligated to pay the subcontractors for the additional work because of the "pay when paid" clause contained in the subcontracts.

The DTRE project was completed ahead of schedule in September of 1995. The matter of a bonus for early completion of the project was the subject of extensive negotiations between Brown & Root, TRIP, and the lenders before the prime construction contract was signed and the financing agreements were reached. The Note Agreement, which governed the financing of the project, contained restrictions on the

7

contractor bonus. In essence, payment of the bonus was subordinated to virtually all other project debts, and could not be made until the outstanding balance of the revolving credit loan was zero, which was anticipated to take five to seven years. Brown & Root knew, therefore, that payment of the early completion bonus would be delayed for at least five to seven years. They did not, however, reveal that information to the subcontractors during the negotiations over distribution of the bonus.

The final version of the bonus provision in the primary contract was left somewhat vague. In the subcontracts, however, a change order was added that read:

> Within 30 days of receipt by General Contractor, Subcontractor will receive 31.5% (or equivalent of $13,500.00 per day of earned bonus whichever is greater) of all Incentive Bonus monies paid to General Contractor by Owner for early completion of the General Contractor's Work Scope. . . . Except as amended herein, all Subcontract terms and conditions shall remain unchanged, in full force and effect.

Regarding the bonus, the district court concluded:

> Plaintiffs did not know when they negotiated and entered into the relevant change orders that the earliest reasonably anticipated pay out was in five to seven years, or that the financial arrangement created a risk that the bonus would not be paid by the Owners at all. Plaintiffs rejected Brown & Root's second contractor bonus proposal, which was designed to reduce the risk of substantial delay or nonpayment by the owner, because information and documents material to these risks had been either concealed or withheld from plaintiffs by Brown & Root.

Brown & Root has not been paid the early completion bonus, nor has it in turn paid a portion of that bonus to the subcontractors.

Plaintiffs filed separate complaints against Brown & Root and its payment bond surety, Highlands, in the U.S. District Court for the

8

Eastern District of Virginia in December of 1996. On April 22, 1997, the district court granted plaintiffs' motion for summary judgment against Highlands. The court rejected Highlands' argument that it was entitled to assert the "pay when paid" defense available to Brown & Root. Because Highlands did not expressly incorporate the "pay when paid" provision into its bond contract, and because the very purpose of a surety bond is to provide payment when the principal is unable to pay, the court held that Highlands was liable to plaintiffs and must pay for the additional work that plaintiffs performed.

On December 30, 1998, the district court issued extensive findings of fact and conclusions of law after a bench trial on the plaintiffs' claims against Brown & Root. The court held that Brown & Root is liable (1) to Lane for $1.4 million plus prejudgment interest for the additional "change in scope" work, (2) to Lane for $2.4 million for the early completion bonus, (3) to Moore for $2.1 million for the additional "change in scope" work, and (4) to Moore for $2.4 million for the early completion bonus.

Defendants appeal the summary judgment order against Highlands and the judgment against Brown & Root. Plaintiffs cross-appeal the denial of prejudgment interest on the early completion bonus and on Moore's additional "change in scope" work.

II.

We first consider whether the district court properly granted plaintiffs' motion for summary judgment against Highlands. This court reviews an order granting summary judgment de novo. United States v. Ringley, 985 F.2d 185, 186 (4th Cir. 1993).

Jurisdiction in the district court was based on diversity of citizenship. See 28 U.S.C. § 1332. We must therefore apply Virginia law to resolve the controversy. Erie R.R. v. Tompkins , 304 U.S. 64 (1938). Virginia courts recognize the validity of "pay when paid" clauses in construction subcontracts. Galloway Corp. v. S.B. Ballard Constr. Co., 464 S.E.2d 349, 354 (Va. 1995). The question presented here, however, is whether a surety can assert the principal's defense based on "pay when paid" language in the subcontract, where the surety did not expressly incorporate the "pay when paid" language into the con-

9

tract payment bond. The Virginia courts have not addressed the use of the "pay when paid" defense by a surety. <u>Federal Ins. Co. v. Starr Elec. Co.</u>, 410 S.E.2d 684, 689 n.3 (Va. 1991). We must therefore determine what rule the Supreme Court of Virginia would apply in these circumstances.

Highlands is a compensated surety. As the Supreme Court of Virginia stated,

> sureties for hire . . . must abide by their contracts and pay everything which by fair intendment can be charged against them. They act, not to accommodate others, but to promote their own interests, and are to be judged accordingly.

<u>Board of Supervisors v. Southern Cross Coal Corp.</u>, 380 S.E.2d 636, 638 (Va. 1989) (quoting <u>Southwood Builders, Inc. v. Peerless Ins.</u>, 366 S.E.2d 104, 107 (Va. 1988)).

The contract by which Highlands must abide includes an unconditional promise to pay any claimant who has not been paid in full within 90 days after work is completed for "sums as may be justly due." There is no dispute that plaintiffs are claimants who completed work more than 90 days ago and who have not been paid for that work. The question is whether, in light of the "pay when paid" condition precedent contained in the subcontract with Brown & Root, the money is nonetheless "justly due" the plaintiffs.

We think the only sensible answer to this question is yes. Highlands, unlike Brown & Root, did not include an express "pay when paid" condition precedent in its surety bond contract. Highlands' attempt to bootstrap its own defense to the "pay when paid" defense asserted by the principal is not persuasive for two reasons.

First, there is no indication that the parties intended the phrase "sums justly due" to incorporate the contingency of payment by the Owners. On the contrary, the very purpose of securing a surety bond contract is to insure that claimants who perform work are paid for their work <u>in the event that the principal does not pay</u>. To suggest that non-payment by the Owners absolves the surety of its obligation is nonsensical, for it defeats the very purpose of a payment bond.

10

Second, our conclusion that the Virginia Supreme Court would not allow a surety to invoke the "pay when paid" defense available to a principal is supported by decisions in other jurisdictions. At least three other courts have rejected attempts by sureties to invoke a "pay when paid" defense that is available to a principal. See OBS Co. v. Pace Constr. Corp., 558 So. 2d 404 (Fla. 1990); Brown & Kerr, Inc. v. St. Paul Fire and Marine Ins. Co., 940 F. Supp. 1245 (N.D. Ill. 1996); Shearman & Assoc., Inc. v. Continental Cas. Co., 901 F. Supp. 199 (D.V.I. 1995). In Brown & Kerr the court stated:

> [The subcontractor] is suing under the Bond and not the sub-contract. The two are separate agreements. [The surety] has neither cited, nor have we discovered, any authority for the proposition that the inability to proceed against the general contractor because of a "pay when paid" clause in the sub-contract necessarily prevents recovery against the surety under the payment Bond. Indeed, such an argument runs counter to the underlying purpose of the payment Bond, i.e. the assurance of payment to subcontractors.

940 F. Supp. at 1249.

We therefore conclude that the district court properly granted plaintiffs' motion for summary judgment against Highlands. As a surety who did not include an express "pay when paid" condition precedent in the contract payment bond, Highlands may not assert the "pay when paid" clause contained in the subcontract between the claimants and the principal as a defense to its liability to pay on the bond.

III.

We next consider whether the district court properly found that Brown & Root is liable to the plaintiffs for payment for the additional "change in scope" work. First, we will determine whether the record supports the district court's findings of fact regarding Brown & Root's conduct. This court reviews findings of fact under the deferential "clearly erroneous" standard. Fed. R. Civ. P. 52(a). Second, we will determine whether, given those findings of fact, the district court correctly applied the "prevention doctrine" to hold that Brown & Root

11

is liable to plaintiffs for the additional work claims, notwithstanding the non-occurrence of the condition precedent contained in the sub-contracts. Conclusions of law are reviewed de novo. Bowers v. Atlanta Motor Speedway, Inc., 99 F.3d 151, 154 (4th Cir. 1996).

A. Findings of fact

The district court found that Brown & Root's own actions in connection with the prime contract and the arrangements for financing additional "change in scope" work contributed to the non-occurrence of the condition precedent. The court found that Brown & Root knew that additional "change in scope" work on the DTRE project would likely be necessary to accommodate design changes regarding the thickness of the pavement sub-base material.[1] Brown & Root nonetheless assured the lenders that no additional work would be necessary.[2] Brown & Root then acquiesced in the decision to remove the "change in scope" illustrations from the contract to accommodate the lenders' interest in capping costs, while at the same time protecting themselves with the Policy and Procedures Letter which memorialized the change illustrations as a "side agreement."[3]

In short, the district court found that Brown & Root agreed to remove the design change illustrations from the prime construction contract to placate the lenders, placed those illustrations in a side agreement (the existence of which was not revealed to the lenders), and assured the lenders that no additional work or design changes would be necessary. In finding these facts, the district court weighed the credibility of witnesses, the testimony offered during the prior arbitration, and various documents entered into evidence during the trial. Because the district court's findings of fact are consistent with

_____

[1] See the testimony of James Harvey, the Brown & Root DTRE project manager, offered during the prior arbitration of the "change in scope" claim. J.A. at 1330.
[2] See representations made in a Consent Agreement signed by Brown & Root. J.A. at 710, 1330.
[3] See internal Brown & Root documents (including a memo prepared by James Harvey dated August 11, 1993) and the trial testimony of James Cowen, Brown & Root's in-house counsel. J.A. at 693, 695.

12

the evidence contained in the record before this court, those findings are not clearly erroneous.**4**

B. Conclusions of law

The subcontracts between Brown & Root and the plaintiffs contain a valid "pay when paid" condition precedent. See Galloway, 464 S.E.2d at 354. Because the Owners have not paid Brown & Root for the arbitration judgment regarding the additional"change in scope" work, Brown & Root can, as an initial matter, assert the non-occurrence of the condition precedent as a valid defense to plaintiffs' claims.

Having found that by its own actions Brown & Root contributed to the non-occurrence of the condition precedent, however, the district court applied the "prevention doctrine" to waive the condition precedent and held that Brown & Root is liable to the plaintiffs for payment for the additional "change in scope" work notwithstanding the "pay when paid" clause in the subcontract.

The prevention doctrine is a generally recognized principle of contract law according to which if a promisor prevents or hinders fulfillment of a condition to his performance, the condition may be waived or excused. See Restatement (Second) of Contracts § 245 (1981); 13 Williston on Contracts, 4th ed., Lord, § 39:4; 17A Am. Jur. 2d, Contracts, § 703; 17B C.J.S., Contracts, § 530. The Supreme Court of Virginia recognized the prevention doctrine in Parrish v. Wightman, 34 S.E.2d 229, 232 (Va. 1945).

_____

**4** Brown & Root challenges the district court's findings of fact as "absurd" because, they argue, Brown & Root stood to lose money as a result of the Owner's failure to pay just as the subcontractors did. Brown & Root claims that there was no reason for them to thwart the proper funding of the additional work. But Brown & Root assumed the risk for only 20% of the additional work, and as a 13% equity partner in TRIP, Brown & Root would have had to contribute substantially to its own payment. We find Brown & Root's bare assertion that it had no reason to engage in the action described by the district court, therefore, to be an inadequate basis for finding clear error in the court's findings.

13

The prevention doctrine does not require proof that the condition would have occurred "but for" the wrongful conduct of the promisor; instead it only requires that the conduct have "contributed materially" to the non-occurrence of the condition. See Restatement (Second) of Contracts § 245 cmt. b (1981) ("but for" causation is not necessary). But see 17A Am. Jur. 2d, Contracts, § 703 ("but for" causation is necessary). The Supreme Court of Virginia does not require the plaintiff to prove "but for" causation. Rather, as that court specifically noted, "[i]t is as effective an excuse of performance of a condition that the promisor has hindered performance as that he has actually prevented it." Parrish, 34 S.E.2d at 232 (quoting Amies v. Wesnofske, 174 N.E. 436 (N.Y. 1931) (quoting 2 Williston on Contracts§ 677)); see also Whitt v. Godwin, 139 S.E.2d 841, 844 (Va. 1965) (citing 5 Williston on Contracts, 3d ed., Jaeger, § 677A for the same proposition).

The district court found that Brown & Root misled the lenders regarding its expectations that potentially costly design changes would occur. By misleading the lenders in this way, Brown & Root made it less likely that the lenders would arrange additional financing to cover the cost of anticipated design changes. We therefore agree with the district court's conclusion that Brown & Root's conduct "hindered" the fulfillment of the condition precedent.

Brown & Root offers an alternative explanation for the failure of the condition precedent. The failure, they contend, was caused by the financial insolvency of the DTRE project, which was a result of lower than projected traffic flow on the DTRE. According to TRIP's Chief Financial Officer, because of the project's financial distress, sometime in December of 1995 the lenders halted all payments to Brown & Root since it was a partner in the DTRE project. Brown & Root concludes, therefore, that the May 1996 arbitration award would not have been paid regardless of whether additional contingency funding had been arranged by the lenders.

We are not persuaded by Brown & Root's argument. The fact that the lenders halted payments to Brown & Root under the circumstances as they existed in December of 1995 is not proof that the lenders would have forbidden TRIP to draw on some other source of funds to pay Brown & Root for the additional work after the arbitration award in May of 1996 under different circumstances. Had the

14

lenders been apprised early on of the strong possibility that the pavement design would change, it is reasonable to infer that appropriate funding would have been arranged and made available for payment to Brown & Root.

The question is essentially a factual inquiry: why did TRIP fail to pay Brown & Root for the additional "change in scope" work? The district court found that TRIP failed to pay, at least in part, because of Brown & Root's misconduct. Because the district court's findings of fact are not clearly erroneous, and given the speculative nature of Brown & Root's alternative explanation, we do not find reversible error in the conclusions reached below as to the additional work claims. We agree that Brown & Root's misrepresentations "contributed materially" to TRIP's failure to pay for the additional "change in scope" work.

Having so concluded, we hold that the prevention doctrine was properly invoked and the performance of the condition precedent was correctly waived as to the additional "change in scope" work. Without the condition precedent as a defense, Brown & Root is liable to the plaintiffs for payment for the additional work.

IV.

We next consider whether the district court properly found that Brown & Root is liable to the plaintiffs for payment of the early completion bonus.

The subcontract change orders at issue state:

> THE TERMS AND CONDITIONS FORMING THE ORIGINAL SUBCONTRACT ARE MADE A PART OF THIS CHANGE ORDER EXCEPT TO THE EXTENT MODIFIED ON THE FACE HEREOF. . . . Within 30 days of the receipt by General Contractor, Subcontractor will receive thirty-one and one-half percent (31.5%) (or the equivalent of $13,500.00 per day of earned bonus whichever is greater) of all Incentive Bonus monies paid to General Contractor by Owner for early completion of the General Contractor's Work Scope.

15

At trial, Brown & Root relied on the "pay when paid" condition precedent contained in the base subcontracts and argued that it was not liable to plaintiffs for the early completion bonus because TRIP never paid Brown & Root any bonus monies. The plaintiffs argued that Brown & Root was liable for payment of the bonus because (1) the "pay when paid" clause in the base subcontracts did not apply to the early completion bonus change orders, and alternatively (2) the condition precedent was waived under the prevention doctrine.

The district court agreed with the plaintiffs' first contention. The court examined the language in the change orders without reference to the "pay when paid" clause in the base subcontracts and found that the change orders were "infected with latent ambiguity." After finding that there was no meeting of the minds as to the meaning of the "within 30 days of receipt" language in the change orders, the district court concluded that such language could not be interpreted as a condition precedent. Relying on Galloway, the court construed the "within 30 days of receipt" language as merely a time of payment provision, rather than a risk shifting provision.

Whether a contract is ambiguous is a question of law which we review de novo. Denzler v. Questech, Inc., 80 F.3d 97, 101 (4th Cir. 1996); Ross v. Craw, 343 S.E.2d 312, 316 (Va. 1986). While the change orders, standing alone, are arguably ambiguous under the district court's analysis, in the instant case the relevant change orders do not, in fact, stand alone. They very clearly incorporate the terms of the base subcontract to the extent that those terms are not modified by provisions in the change orders. The "within 30 days of receipt" language in the change orders is consistent with and does not modify the "pay when paid" condition in the base subcontracts. Payment of the bonus for early completion of the project was, therefore, subject to the "pay when paid" condition precedent in the base subcontracts.

The question remains whether, regarding the bonus claims, the "pay when paid" condition in the subcontract should be waived under the prevention doctrine.[5] The district court did not reach this issue. To

_____

[5] Although we held in part III that the prevention doctrine was correcly applied to waive the "pay when paid" condition as to payment for the

16

properly apply the prevention doctrine and waive the "pay when paid" condition precedent as to the bonus claims, the district court must determine whether active, wrongful conduct by Brown & Root "prevented or hindered" TRIP's payment of the early completion bonus to Brown & Root. Judgment in plaintiffs' favor on the bonus claims is proper only if plaintiffs have demonstrated that Brown & Root's conduct contributed materially to TRIP's failure to pay Brown & Root the bonus. Since factual questions are properly considered by the district court in the first instance, we remand for further proceedings to consider whether the "pay when paid" condition should be waived as to the bonus claims under the prevention doctrine.

V.

Finally, we consider the plaintiffs' contention on the cross-appeal that the district court improperly denied prejudgment interest as to payment for the early completion bonus and Moore's additional "change in scope" work.**6**

The award of prejudgment interest is within the discretion of the district court. Maksymchuk v. Frank, 987 F.2d 1072, 1077 (4th Cir. 1993). District courts must weigh the equities in a particular case to determine whether an award of prejudgment interest is appropriate. McDevitt & Street Co. v. Marriott Corp., 754 F. Supp. 513, 515 (E.D. Va. 1991).

_____

additional "change in scope" work, application of the doctrine to waive the condition for the early completion bonus involves a separate and distinct inquiry. Our holding in part III affirmed the district court's finding that Brown & Root's active conduct hindered TRIP's payment to Brown & Root for the additional "change in scope" work. Those findings of fact are unrelated to the bonus claim. Although there is only one "pay when paid" clause in each subcontract, the clause creates separate conditions precedent regarding payment for the various elements of plaintiffs' performance under the subcontract.

**6** Denial of prejudgment interest on the bonus claims may become a moot issue on remand. In the event that the district court makes findings of fact to support judgment in favor of the plaintiffs on the bonus claims, however, we will review the decision below regarding prejudgment interest.

17

Here, the district court concluded that a legitimate controversy existed between Brown & Root and the plaintiffs regarding the precise timing of the payment of the early completion bonus. Plaintiffs agreed to a change order regarding the bonus which contained a fair degree of uncertainty over the timing of the payment. Because plaintiffs expressly accepted some uncertainty as to the timing of the bonus payment, the district court did not abuse its discretion by denying plaintiffs prejudgment interest on that portion of the award.

The district court was also within its discretion in denying Moore prejudgment interest as to the additional "change in scope" work. Whereas the Lane subcontract, in Article 6.5, contains a provision requiring the payment of interest on payments delayed beyond forty-five days, the Moore subcontract contains no such provision. The district court's decision, therefore, to grant Lane prejudgment interest as to the "change in scope" work, while denying same to Moore, was reasonable.

VI.

For the reasons discussed above, we affirm the orders of the district court in part, reverse in part, and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

WILKINS, Circuit Judge, concurring in part and dissenting in part:

The majority opinion affirms the grant of summary judgment against Highlands Insurance Co. (Highlands), affirms the judgments in favor of Moore Brothers Co., Inc. (Moore) and The Lane Construction Corporation (collectively, "the Subcontractors") with respect to the "change in scope" claims, and reverses the ruling of the district court that the pay-when-paid clauses do not apply to the early completion bonus, remanding the early completion bonus claims to the district court for further proceedings. The majority opinion also affirms the denial of the Subcontractors' request for prejudgment interest on the early completion bonus claims and Moore's request for prejudgment interest on its change in scope claim. I agree that the dis-

18

trict court erred in awarding judgment to the Subcontractors on the early completion bonus claims and that the district court did not err in denying the requests for prejudgment interest. However, because Virginia law and the surety bond itself allowed Highlands to assert Brown & Root, Inc.'s (Brown & Root) pay-when-paid defense, I would conclude that the district court erred in holding that Highlands could not assert that defense. I would also conclude that the district court erred in holding that the prevention doctrine excused the nonfulfillment of the pay-when-paid condition with respect to the change in scope claims.

I.

I first address Highlands' argument that the district court erred in granting summary judgment against it. Although some jurisdictions prohibit a general contractor from shifting the risk of an owner's insolvency to its subcontractors, see, e.g., N.C. Gen. Stat. § 22C-2 (1999), Virginia law is clear that when a subcontract unambiguously states that payment by the owner to the contractor is a condition precedent to payment by the contractor to the subcontractor, such a term will be enforced. See Galloway Corp. v. S.B. Ballard Constr. Co., 464 S.E.2d 349, 354 (Va. 1995). Virginia law is also clear that because a surety and its principal are in privity, a surety"stands in the principal's shoes and may assert ... those defenses available to the principal." Board of Supervisors v. Southern Cross Coal Corp., 380 S.E.2d 636, 639 (Va. 1989).

Because Highlands stands in the shoes of Brown & Root, to the extent that Brown & Root can assert the pay-when-paid defense, Highlands can do so as well. Without mentioning this dispositive principle of Virginia law, the majority holds that Highlands cannot assert Brown & Root's defense because the pay-when-paid clause was not incorporated into the bond. See ante, at 9-11. However, even assuming that Virginia law provided that a surety can assert a defense of its principal only when the contract language providing the basis for the defense is incorporated into its bond, Highlands can assert the pay-when-paid defense because the pay-when-paid clause here was incorporated into the bond. The bond provided in relevant part that Brown & Root, as principal, and Highlands, as surety:

19

jointly and severally agree with the Obligees [Toll Road Investors Partnership II, L.P. ("TRIP"), the lenders, and the Virginia Department of Transportation ("VDOT")] that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon.

J.A. 1818 (emphasis added). The phrase "justly due" in this context can only mean "justly due" from the contractor under the subcontracts, as the subcontracts provide the only basis for the Subcontractors being "due" any payment at all. Cf. Taylor Constr. Inc. v. ABT Serv. Corp., 163 F.3d 1119, 1122 (9th Cir. 1998) (stating, in applying the Miller Act, see 40 U.S.C.A. §§ 270a-270d (West 1986 & Supp. 1999), that "[l]ong-standing precedent confirms that `sums justly due' means the sums due the party under the bonded contract"); United States ex rel. Maddux Supply Co. v. St. Paul Fire & Marine Ins. Co., 86 F.3d 332, 336 (4th Cir. 1996) (per curiam) (relying on terms of the contract between the subcontractor and materials supplier in determining that interest and attorneys' fees were included in the "sums justly due" the supplier under the Miller Act); United States ex rel. Woodington Elec. Co. v. United Pac. Ins. Co., 545 F.2d 1381, 1383 (4th Cir. 1976) (stating that "sums justly due" a subcontractor under the Miller Act "must be determined by reference to the subcontract"). Here, because the Subcontractors were entitled to be paid under the subcontracts only if Brown & Root received payment from TRIP and that condition did not occur, the Subcontractors were not entitled to payment under the bond.

In rejecting the notion that sums "justly due" refers to sums justly due under the terms of the subcontracts, the majority fails to explain to what it believes the phrase "sums justly due" refers.[1] Rather, the

_____

[1] Assuming arguendo that"justly due" refers to some general notion of fairness, rather than to the subcontracts, I cannot understand how subcon-

20

majority simply concludes that allowing Highlands to assert the pay-when-paid defense against the Subcontractors "is nonsensical, for it defeats the very purpose of a payment bond," which the majority asserts without analysis to be "to insure that claimants who perform work are paid for their work in the event that the principal does not pay."[2] Ante, at 10. Of course, to baldly characterize the "purpose" of the bond in such a broad fashion is merely to assume that the parties intended that Highlands' liability would not be coextensive with Brown & Root's--an assumption that both Virginia surety law and the bond suggest is completely unwarranted.[3]

Moreover, in proclaiming that allowing Highlands to assert Brown & Root's pay-when-paid defense would defeat the purpose of the bond, the majority overlooks the fact that Brown & Root agreed to indemnify Highlands for amounts that Highlands would have to pay under the bond. The simple fact here is that someone--either Brown & Root, the Subcontractors, or Highlands--had to bear the risk that TRIP would not pay Brown & Root. Virginia law specifically allows subcontractors to bear that risk, and the Subcontractors here agreed to do so. The majority essentially rewrites the agreements that these sophisticated parties negotiated at arms length and shifts the risk of nonpayment by TRIP back to Brown & Root. This result is completely at odds with the freedom of contract principles embraced in Galloway and is most assuredly not the result that the Supreme Court

_____

tractors who agreed that they would be entitled to payment only if the owner pays the contractor can be said to be "justly due" payment when the owner does not pay the contractor. Here, Brown & Root specifically contracted with Highlands to indemnify Highlands for any losses suffered by Highlands as a result of the bond. Therefore, the effect of preventing Highlands from asserting Brown & Root's defense is simply to expand Brown & Root's liability. Given the parties' agreement, it would be unfair to force Brown & Root to pay the Subcontractors when it has never been paid by TRIP.

**2** Of course, the majority's argument would work equally well against the assertion by the surety of any of its principal's defenses.
**3** A more accurate characterization of the purpose of the bond, considering Virginia surety law and the terms to which the parties agreed, is that the bond insured against Brown & Root's wrongful default.

21

of Virginia would reach.**4** Accordingly, I would reverse the grant of summary judgment against Highlands. See Doe v. Doe, 973 F.2d 237, 240 (4th Cir. 1992) (explaining that the function of this court in a diversity case is to resolve the state law issues as we predict the highest court in the state would).

## II.

I next address Brown & Root's contention that the district court erred in ruling that Brown & Root could not assert the nonfulfillment of the pay-when-paid condition as a defense to the change in scope claims because Brown & Root prevented or hindered the fulfillment of the condition.

---------------------------------------------------------------

**4** Even if existing Virginia law did not make the correct result in this case perfectly clear, the cases from other jurisdictions relied upon by the majority would provide little support for its result. In Shearman & Associates, Inc. v. Continental Casualty Co., 901 F. Supp. 199 (D.V.I. 1995), and OBS Co. v. Pace Construction Corp., 558 So. 2d 404 (Fla. 1990), the lien statutes for the two relevant jurisdictions required the posting of statutory payment bonds by a private owner wishing to exempt its property from subcontractor liens. See Shearman, 901 F. Supp. at 201-02; OBS, 558 So. 2d at 408. Those courts held that local lien law would be thwarted if the protection provided by the bonds was not equal to that which would have been provided under the liens. See Shearman, 901 F. Supp. at 202-03; OBS, 558 So. 2d at 408. Here, by contrast, the Subcontractors waived their rights to assert mechanics liens well before Highlands issued its bond, and the bond was not a statutory substitute for those rights.

The result in Brown & Kerr, Inc. v. St. Paul Fire & Marine Insurance Co., 940 F. Supp. 1245 (N.D. Ill. 1996), rested in part on the conclusion of the court that a pay-when-paid clause is not a valid condition precedent to payment from the contractor under the subcontract. See Brown, 940 F. Supp. at 1250. Beyond that, the Brown court employs the same circular reasoning that the majority employs in the present case. In determining whether a surety is entitled to assert all of the defenses of its principal, the Brown court simply assumes that the "purpose" of a bond is to ensure that subcontractors receive payment, and therefore concludes that allowing a surety to assert its principal's pay-when-paid defense would contravene that purpose. See id. at 1249. That analysis is flawed for the reasons already discussed.

22

Under the prevention doctrine, when a promisor hinders or prevents fulfillment of a condition and that hindrance or prevention "contributes materially" to the nonoccurrence of the condition, the condition is excused. Restatement (Second) of Contracts § 245 (1981). Because the prevention doctrine "is purely one of waiver," only "active conduct of the conditional promisor, preventing or hindering the fulfillment of the condition" excuses nonfulfillment of the condition. Parrish v. Wightman, 34 S.E.2d 229, 232 (Va. 1945) (internal quotation marks omitted). Moreover, "the action of the party whose conduct is alleged to have prevented performance must be wrongful, and, accordingly, in excess of his legal rights." Whitt v. Godwin, 139 S.E.2d 841, 844 (Va. 1965) (internal quotation marks omitted).

The district court found that four acts by Brown & Root excused the nonfulfillment of the pay-when-paid condition, none of which, in my view, supports excusing nonfulfillment. The primary act on which the district court relied--and the one on which the majority relies in affirming--was that Brown & Root "concealed from the lenders its expectation that changes in scope would occur." Lane Constr. Corp. v. Brown & Root, Inc., 29 F. Supp. 2d 707, 724 (E.D. Va. 1998). The district court reasoned that absent the concealment, the lenders would have provided adequate contingency funding and "money would have been available to pay Brown & Root for the change in scope claims." Id. These findings were clearly erroneous because the district court had no reasonable basis for concluding that Brown & Root's concealment of its concern that scope changes would be necessary contributed materially to TRIP's failure to pay Brown & Root for the change in scope work.

In reviewing this issue, it is important to view the information concealed in light of the information that the lenders did have. The lenders must have been aware that there was a possibility that changes--particularly changes in the asphalt thickness--would occur: As the district court found, the consulting engineering firm retained by the lenders recommended the additional pavement thickness. See id. at 713. The lenders also must have been aware that a change in asphalt thickness and similar changes might entitle Brown & Root to additional payment under the contract: Although the parties had deleted language in the contract stating that a change in asphalt thickness

23

would constitute a substantial change in project scope, the parties had not included language in the contract stating that such a change would not constitute a substantial change in project scope. Accordingly, the lenders were well aware that there was a possibility that TRIP would have to pay for increased asphalt thickness.

With this background, it is important to recognize that the only information that Brown & Root "concealed" from the lenders relating to whether extra work would be required was Brown & Root's concern that the lenders' own consultant's view that the asphalt needed to be thicker might prevail with the VDOT over the contrary view advanced by Brown & Root's engineering firm. The question then becomes what effect, if any, the lenders' knowledge of Brown & Root's concern would have had on the lenders' evaluation of the views of the lenders' own engineer. Importantly, there is no testimony from the lenders stating that had they known of Brown & Root's concern, they would have required further funding. Without such evidence, the district court could only speculate concerning whether the concealment had any effect at all on the lenders' evaluation of the probability that TRIP would have to pay for thicker asphalt.

It is possible that disclosure of Brown & Root's concern to the lenders would have had some effect on the lenders' assessment of the probability that TRIP ultimately would have to pay for thicker asphalt. Nevertheless, there simply was no reasonable, nonspeculative basis from which a factfinder could conclude that this disclosure, had it been made, would have caused the lenders to decide that funding for the project was inadequate. And, even if such a basis existed, a factfinder still would have been left to speculate as to whether knowledge of Brown & Root's concern would have prompted the lenders to provide more funding or would have prompted the lenders to decide not to fund the project at all.[5] In short, the Subcontractors

_____

[5] The district court also found that had the Subcontractors known that the lenders had been misled concerning the scope of the project, the Subcontractors "could have refused to agree to the pay-when-paid condition." Lane Constr., 29 F. Supp. 2d at 724. However, the prevention doctrine would apply only if Brown & Root's conduct contributed materially to the nonfulfillment of the condition. The extent to which Brown & Root's conduct may have caused the pay-when-paid clause to come into existence is irrelevant.

24

failed miserably in their attempt to prove that Brown & Root contributed materially to TRIP's failure to pay for the change in scope claims. Accordingly, I believe the district court erred in excusing the nonfulfillment of the pay-when-paid condition by virtue of the prevention doctrine, and the majority errs in holding otherwise.

III.

In sum, I would reverse the grant of summary judgment against Highlands; reverse the judgments against Brown & Root on the Subcontractors' change in scope claims; remand the early completion

_____

The other three acts by Brown & Root that the district court found justified excusing the nonfulfillment of the pay-when-paid condition also do not warrant application of the prevention doctrine. The second basis identified by the district court was that Brown & Root "signed the construction contract, from which the changes in scope had been deleted at the lenders['] insistence." Id. Clearly, however, it cannot be said that Brown & Root's signing the contract contributed materially to TRIP's failure to pay Brown & Root. The existence of the contract was Brown & Root's only basis of entitlement to payment. To the extent that what the district court really meant was that the pay-when-paid condition was excused by Brown & Root's failure to sign another contract with different terms, such a failure obviously is not active conduct, and therefore cannot excuse the fulfillment of the pay-when-paid condition. See Parrish, 34 S.E.2d at 232.

The district court next found that fulfillment of the pay-when-paid condition was excused because Brown & Root "did not disclose to [the Subcontractors] the relevant provisions in the financing agreements, including the provisions relating to the lenders['] right to refuse payment for changes in scope." Lane Constr., 29 F. Supp. 2d at 724. Again, however, there is no evidence in the record that this nondisclosure contributed materially to TRIP's failure to pay Brown & Root.

The district court finally found that the nonfulfillment of the pay-when-paid condition was excused because Brown & Root "ordered [the Subcontractors] to perform the work stemming from changes in scope with knowledge, not available to [the Subcontractors], that no sources of funding of payment for the extra work could realistically be said to exist." Id. Yet again, it is not the case that Brown & Root's ordering the work contributed materially to TRIP's failure to pay Brown & Root.

25

bonus claims; and affirm the denial of the requests for prejudgment interest.

26