T.S. Ellis, III, United States District Judge
At issue in this breach of contract case is plaintiff O'Hagan Meyer, PLLC's ("O'Hagan") motion for summary judgment on count II of its complaint and Liberty Insurance Underwriters, Inc.'s ("Liberty") motion seeking sanctions (Docs. 64, 73). Liberty concedes that it owes $86,940.70 to O'Hagan for O'Hagan's defense of KitBar Enterprises, LLC ("KitBar") and that entry of judgment under count II is proper. Thus, the only issues to resolve are:
(i) Whether O'Hagan should be awarded prejudgment interest;
(ii) Whether O'Hagan's conditioning settlement of its claim on resolution of KitBar's claim constituted "bad faith" sufficient to warrant a sanction; and
(iii) Whether O'Hagan's refusal to settle its claim against Liberty "unreasonably and vexatiously" multiplied the proceedings in the case in violation of 28 U.S.C. § 1927.
The matter has been fully briefed and argued and is now ripe for disposition.
I.[1]
This breach of contract case arises out of Liberty's failure to pay O'Hagan Meyer *616 for O'Hagan Meyer's representation of Liberty's insured, KitBar, in a 2015 lawsuit. That lawsuit was ultimately settled, but not before Liberty issued a January 12, 2017 letter denying KitBar coverage for the lawsuit. In the January 2017 letter, Liberty stated that it would honor its obligation to pay defense costs and expenses incurred by O'Hagan through January 12, 2017. The unpaid defense costs and expenses as of January 12, 2017 totaled $86,940.70.
KitBar and O'Hagan did not respond to Liberty's January 12 letter. On April 5, 2017, after receiving no response, Liberty filed suit against KitBar in the Circuit Court of Fairfax County, Virginia, alleging fraud and breach of contract and seeking rescission of the insurance policy Liberty had issued to KitBar. A month later, on May 12, 2017, KitBar and O'Hagan filed suit against Liberty alleging two counts: (i) breach of contract for failing to defend KitBar in the 2015 lawsuit, and (ii) breach of contract for failing to pay O'Hagan the $86,940.70 in defense fees incurred as of January 12, 2017.
On June 16, 2017, Liberty offered to settle count II of the complaint with O'Hagan, agreeing to pay the full amount owed. O'Hagan did not accept, and instead continued litigating the case. O'Hagan informed Liberty that is would only settle count II if Liberty agreed to settle count I. In October 2017, Liberty renewed its offer to settle count II after O'Hagan served Liberty with initial discovery requests. O'Hagan again refused the offer to settle and Liberty filed a motion for a protective order, arguing that discovery related to count II was unnecessary. The magistrate judge denied Liberty's motion.
The parties filed cross-motions for summary judgment on counts I and II. In a memorandum opinion and order, summary judgment in favor of Liberty was granted on KitBar's claim in count I. See KitBar Enterprises, LLC et al v. Liberty Insurance Underwriters, Inc. , 291 F.Supp.3d 758, 2018 WL 1138174 (E.D. Va. 2018) (holding that coverage does not exist where the applicant does not disclose, as required by the policy, the existence of potential litigation that would fall within the coverage of the policy). With respect to O'Hagan's motion for summary judgment on count II of the complaint, Liberty does not dispute that it owes the amount O'Hagan seeks in count II. Instead, Liberty argues that O'Hagan is not entitled to prejudgment interest because O'Hagan is responsible for the lost opportunity to use and enjoy the benefit of the money Liberty owes. Liberty also moves for sanctions against O'Hagan, arguing that O'Hagan's refusal to settle with Liberty constituted abuse of process sanctionable pursuant to the inherent powers of federal courts and 28 U.S.C. § 1927.
II.
The first question is whether O'Hagan is entitled to the award of prejudgment interest on its claim in count II of the complaint for fees totaling $86,940.70. Virginia law controls the award of prejudgment interest in this diversity breach of contract action. Hitachi Credit Am. Corp. v. Signet Bank , 166 F.3d 614, 633 (4th Cir. 1999). Under Virginia law, a decision to award prejudgment interest is within the discretion of the trial court. See Dairyland Ins. Co. v. Douthat , 248 Va. 627, 631, 449 S.E.2d 799 (1994). In exercising discretion, trial courts "must weigh the equities in a particular case to determine whether an award of prejudgment interest is appropriate." Moore Bros. Co. v. Brown & Root, Inc. , 207 F.3d 717, 727 (4th Cir. 2000).
*617 Award of prejudgment interest is inappropriate in this case. Liberty offered to settle O'Hagan's claim in full at the outset of the litigation of this case. O'Hagan not only refused that initial settlement offer, but also refused multiple subsequent offers to settle with Liberty. Had O'Hagan accepted Liberty's offer at the outset of the litigation, O'Hagan would have enjoyed the use and benefit of the funds owed by Liberty. Because O'Hagan's own actions denied it the benefit and use of the money owed by Liberty, O'Hagan is not entitled to prejudgment interest. Accordingly, O'Hagan's request for prejudgment interest is denied.
III.
Liberty also argues that O'Hagan should be sanctioned for conditioning settlement of its claim in count II of the complaint on Liberty's agreement to settle KitBar's claim in count I. Federal courts have inherent power to impose sanctions on a party or its counsel for bad faith conduct that abuses legal process. Chambers v. NASCO, Inc. , 501 U.S. 32, 45-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). To determine whether a party or attorney has engaged in bad faith conduct, courts may look "not only in the actions that led to the lawsuit, but also in the conduct of the litigation." Stradtman v. Republic Services, Inc. , 121 F.Supp.3d 578, 581 (E.D. Va. 2015) (quoting Roadway Express, Inc. v. Piper , 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) ).
The question here is whether O'Hagan's refusal to accept Liberty's offers of settlement constituted bad faith abuse of legal process. Liberty repeatedly offered to pay O'Hagan the full amount requested in count II, but O'Hagan was not obligated to accept the offer of settlement, and no rule bars O'Hagan from conditioning settlement of its claim on settlement of its client's claim.[2] Liberty is correct that litigating O'Hagan's claim added to the expense of the litigation, but all litigation is expensive, and Liberty could have limited the impact of O'Hagan's refusal to settle by making an offer of judgment pursuant to Rule 68, Fed. R. Civ. P. If Liberty had offered judgment to O'Hagan in the amount asked for in the complaint, O'Hagan would have be responsible for any costs incurred after Liberty offered judgment if O'Hagan failed to recover more than the amount offered by Liberty. Because Liberty was prepared to concede the full amount owed, O'Hagan would have faced the prospect of paying for all costs incurred after the offer of judgment. Indeed, these are precisely the circumstances in which Rule 68 was intended to operate to reduce litigation costs and encourage settlement. In sum, although O'Hagan's conduct increased the expense of litigating this case, O'Hagan's conduct does not rise to the level of sanctionable bad faith.
Liberty also seeks sanctions pursuant to 28 U.S.C. § 1927, which provides in relevant part that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." A party seeking sanctions must show: (i) that the attorney against whom sanctions are sought multiplied the proceedings; (ii) that the attorney multiplied the proceedings in bad faith; and (iii) that the attorney's conduct resulted in excess attorneys' fees and costs. See DeBauche v. Trani , 191 F.3d 499, 511 (4th Cir. 1999). The Fourth Circuit has held that as a matter of law the filing of a single complaint *618 "cannot be held to have multiplied the proceedings unreasonably and vexatiosuly." Id.
Liberty argues that O'Hagan's continued litigation of its single count in the complaint "unreasonably and vexatiously" multiplied the proceedings in this case by requiring Liberty to file a motion to dismiss and motion for summary judgment with respect to count II despite its offer to pay the claim in full. This claim fails; even if O'Hagan's continued litigation of its claim in count II multiplied the proceedings in this case, O'Hagan did not do so unreasonably since it was under no obligation to accept Liberty's settlement offer. Thus, Liberty's motion for sanctions pursuant to § 1927 is denied.
Accordingly, for the reasons stated above, and for good cause shown,
It is hereby ORDERED that O'Hagan's motion for summary judgment is GRANTED IN PART and DENIED IN PART (Doc. 64). It is DENIED with respect to O'Hagan's request for prejudgment interest. It is GRANTED in all other respects.
It is further ORDERED that Liberty's motion for sanctions is DENIED (Doc. 73).
The Clerk is directed to enter judgment in favor of O'Hagan and against Liberty in the total amount of $86,940.70, and to place this matter among the ended causes. The Clerk is further directed to send a copy of this Order to all counsel of record.

The facts recited here are derived from O'Hagan's statement of undisputed facts in its motion for summary judgment. Liberty disputed the characterization of the facts in two of O'Hagan's enumerated paragraphs in its statement of undisputed facts, but Liberty does not deny the facts relevant and material to deciding O'Hagan's motion for summary judgment. Facts related to O'Hagan and Liberty's conduct during the litigation are derived from Liberty's motion for sanctions and O'Hagan's response, though the parties do not disagree as to any of the facts relevant to the sanctions motion.

O'Hagan's position on settlement was questionable, but Liberty could have remedied the situation by invoking Rule 68, Fed. R. Civ. P. and making an offer of judgment.