762 So.2d 973 (2000)
WMS CONSTRUCTION, INC., Appellant,
v.
PALM SPRINGS MILE ASSOCIATES, LTD. and North American Specialty Insurance Company, Appellees.
No. 3D99-2047.
District Court of Appeal of Florida, Third District.
May 31, 2000.
*974 Frese, Nash & Torpy and Lisa L. Hogreve (Melbourne); Akerman, Senterfitt & Eidson and Kimberly A. Ashby, Orlando, for appellant.
Zarco & Pardo and Elissa Gainsburg, Miami, for appellees.
Before LEVY, FLETCHER, and RAMIREZ, JJ.
FLETCHER, Judge.
WMS Construction, Inc. [Subcontractor] appeals a final summary judgment determining that it failed to comply with a mandatory notice provision of the Construction Lien Law, chapter 713, part I, Florida Statutes (1997), thus is precluded from seeking recovery for labor and materials it supplied to Palm Springs Mile Associates, Inc. [Owner]. The controlling question is whether the payment bond issued to Noland Construction, Inc. [General Contractor] by North American Specialty Insurance Company [Surety] is a conditional payment bond,[1] or is, as held by the trial court, an unconditional payment bond.[2] For the reasons which follow, we reverse.
First, we note that the fundamental purpose of the Construction Lien Law is to protect those who have provided *975 labor and materials for the improvement of real property. Kettles v. Charter Mortgage Co., 337 So.2d 1012 (Fla. 3d DCA 1976). It is to be construed favorably so as to give laborers and suppliers the greatest protection compatible with justice and equity. See Crane Co. v. Fine, 221 So.2d 145 (Fla.1969)(superseded by statute on other grounds as stated in Pilot Elec. Constr. Co. v. Waters, 384 So.2d 61 (Fla. 1st DCA, 1980)). In obtaining this protection a subcontractor must be certain it strictly complies with the statutory provisions by which it seeks affirmative relief. Kettles, 337 So.2d 1012. One of the questions that a subcontractor must successfully resolve, or risk the loss of its compensation, is whether the payment bond issued to the general contractor by the surety is a conditional or an unconditional one. Depending upon that distinction is the procedure (including notice requirements) that a subcontractor must follow in order to secure its legal recourse in the event of nonpayment by the contractor.[3] Here the trial court concluded that the surety bond issued to the General Contractor is an unconditional one and the Subcontractor failed to comply with the applicable procedure for recovery.
Section 713.23(1)(a), Florida Statutes (1997), provides for unconditional payment bonds. It reads in pertinent part:
"The payment bond required to exempt an owner under this part shall be furnished by the contractor in at least the amount of the original contract price before commencing the construction of the improvement under the direct contract, and a copy of the bond shall be attached to the notice of commencement when the notice of commencement is recorded. The bond shall be ... conditioned that the contractor shall promptly make payments for labor, services, and material to all lienors under the contractor's direct contract."
Under this section the lien for a subcontractor's labor, services, and materials attaches to the bond, and an owner's property is exempt therefrom. If a contractor fails to pay lienors under its contract with the owner, then the surety is unconditionally liable for payment to the unpaid lienors,[4] so long as the lienors meet the notice and other requirements relating to unconditional bonds.
On the other hand, a general contractor may avail itself of section 713.245(1), Florida Statutes (1997), which permits a general contractor to provide a conditional surety bond:
"[I]f the contractor's written contractual obligation to pay lienors is expressly conditioned upon and limited to the payments by the owner to the contractor,[5] the duty of the surety to pay lienors will be coextensive with the duty of the contractor to pay, if the bond contains on the front page, in at least 10-point type, the statement:
THIS BOND ONLY COVERS CLAIMS OF SUBCONTRACTORS, SUB-SUBCONTRACTORS, SUPPLIERS, AND LABORERS TO THE EXTENT THE CONTRACTOR HAS BEEN PAID FOR THE LABOR, SERVICES, OR MATERIALS SUPPLIED BY SUCH PERSONS. THIS BOND DOES NOT PRECLUDE YOU FROM SERVING A NOTICE TO OWNER OR FILING A CLAIM OF LIEN ON THIS PROJECT."
Thus, under section 713.245, a contractor can limit its (and its surety's) exposure to payments actually made by an owner to the contractor, by entering into the statutorily defined contract and providing a bond with the 10-point type statement. *976 Under this section an owner's property is not exempt from subcontractors' liens. Section 713.245(3), Florida Statutes (1997). There lies a subcontractor's means of protection in a conditional bond situation in which the owner fails to pay the general contractor (and thus neither the general contractor nor the surety is required to pay the subcontractor).
In the instant case, the payment bond contains the "10-point type" conditional statement from section 713.245. This "pay-when-paid" language limits the Surety's liability to the payments made by the Owner. Under section 713.245, the Owner's property is not exempt from the Subcontractor's lien by which the Subcontractor seeks recovery. The notice and other requirements applicable to section 713.23 unconditional bonds are not relevant.
The instant contract between the General Contractor and the Subcontractor includes paragraph 12.1 which states:
"Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Contract Documents, the Architect has issued a Certificate for Payment covering the Subcontractor's completed Work and the Contractor has received payment from the Owner." [emphasis supplied.]
(R.76).
Exhibit D to the instant contract states in full:
"Upon final payment a sworn statement with supporting waiver of lien from your material suppliers and/or subcontractors must be furnished with your final waiver of lien. A sworn statement must be furnished to us listing major material suppliers and subcontractors and the amounts of their contracts at the time of first payout. Interim payments require partial waivers with supporting material supplier's waivers in exchange for payment. Your payments are made in accordance with our interim draws as we show you on our sworn statement with your percentage of completion as we estimate it at the time of our billing to the owner. This may not conform to your billing to us. No funds will be owed to the subcontractor unless the General Contractor is paid by the owner in accordance to the sworn statement. The subcontractor fully understands that in event of non payment by the owner to the General Contractor, the subcontractor has legal recourse against the owner through the mechanic's Lien Laws or other legal procedures for their correct monies due." [emphasis supplied.]
(R.81).
The Florida Supreme Court has held similar language to be unambiguous and to require payment from an owner to a general contractor before payment became due to a subcontractor. See DEC Electric, Inc. v. Raphael Construction Corp., 558 So.2d 427 (Fla.1990). Here then, both the payment bond and the contract[6] between the General Contractor and the Subcontractor contain the necessary language to create a conditional bond situation under section 713.245.
It would seem that the matter is thus resolved. However, the Owner points out to us language which is ostensibly incorporated, by reference to the contract between the Owner and the General Contractor, into the contract between the General Contractor and the Subcontractor. This language appears to require the General Contractor to provide the Owner with a section 713.23 (unconditional) payment bond. This language, the Owner contends, being in conflict with the language of the General/Subcontractor contract requiring a *977 section 713.245 (conditional) bond, creates an ambiguity which, as a matter of law, renders the bond an unconditional one. For this the Owner cites to OBS Co., Inc. v. Pace Construction Corp., 558 So.2d 404 (Fla.1990) and Harris Air Systems, Inc. v. Gentrac, Inc., 578 So.2d 879 (Fla. 1st DCA 1991). We need not go through an analysis as to the impact the Owner argues these cases have on the instant matter, as both cases involved contracts entered into prior to the enactment of section 713.245 (effective January 1, 1991).[7] As section 713.245 clearly states, if (1) the contractor's written obligation to pay the subcontractor is expressly limited to payments made to the general contractor by the owner, and (2) the 10-point type language is on the front page of the bond, then the bond is a conditional one. As these two requirements are met, here, by the instant bond, it is a conditional one.
We also observe that even if any ambiguity had existed it was resolved by the General Contractor's providing the conditional payment bond. However, we reiterate, because the two requirements of section 713.245 were met, the bond was unambiguously a conditional one notwithstanding the attempted avoidance thereof by the incorporation by reference of the General Contractor/Owner contract into the Subcontractor's contract. We specifically hold that section 713.245 cannot be so circumvented.
Our conclusion comports with the purpose of the Construction Lien Law, which we initially noted is to provide laborers and suppliers with the greatest protection compatible with justice and equity. As a consequence, we reverse the final summary judgment and remand the case for further proceedings consistent herewith.
Reversed and remanded.
NOTES
[1] Governed by § 713.245, Fla. Stat. (1997). It is also referred to as a "pay-when-paid" bond.
[2] Governed by § 713.23, Fla. Stat. (1997).
[3] For a brief discussion of the procedure to perfect claims, see Stuart H. Sobel, Section 713.245 Conditional Payment BondsPanacea or Pandora?, Fla. B.J., Oct. 1998, at 86.
[4] Whether the owner pays the general contractor or not.
[5] Thus the "pay-when-paid" tag given to conditional bonds.
[6] In North American Specialty Ins. Co. v. Hughes Supply, Inc., 705 So.2d 616 (Fla. 4th DCA 1998), the contracts between the general contractor and the subcontractors did not contain "pay-when-paid" clauses, thus the bonds were not conditional ones under section 713.245, but were unconditional bonds under section 713.23. The instant Owner's reliance thereon is thus misplaced.
[7] There is nothing in section 713.245 indicating a retroactive application was intended. Indeed, it would have required a highly effective crystal ball for the drafter of a pre-713.245 bond to include the 10-point type statement on the first page of the bond.