**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNIVERSAL CONCRETE PRODUCTS
CORPORATION,

*Plaintiff-Appellant,*

v.

TURNER CONSTRUCTION COMPANY,

*Defendant-Appellee.*

No. 09-1569

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge.
(2:08-cv-00298-RAJ-TEM)

Argued: January 26, 2010

Decided: February 19, 2010

Before GREGORY and DUNCAN, Circuit Judges,
and Catherine C. BLAKE, United States District Judge
for the District of Maryland, sitting by designation.

Affirmed by published opinion. Judge Gregory wrote the
opinion, in which Judge Duncan and Judge Blake joined.

## COUNSEL

**ARGUED**: James T. Lang, PENDER & COWARD, PC, Virginia Beach, Virginia, for Appellant. Jeffrey Mitchell Hum-

mel, SEYFARTH & SHAW, LLP, Washington, D.C., for Appellee. **ON BRIEF:** Jack Rephan, PENDER & COWARD, PC, Virginia Beach, Virginia, for Appellant. Daniel P. Wierzba, SEYFARTH & SHAW, LLP, Washington, D.C., for Appellee.

## OPINION

GREGORY, Circuit Judge:

This appeal requires us to consider the applicability and enforceability of a "pay-when-paid" clause agreed to by the parties in this case. Specifically, we must decide whether certain provisions in a prime contract, which the general contractor and a subcontractor incorporated by reference into their subcontract, render an otherwise unambiguous pay-when-paid clause within that subcontract ambiguous. The district court found that they did not. We affirm.

I.

In October 2007, Universal Concrete Products Corporation ("Universal"), a Pennsylvania corporation, entered into a written agreement with Turner Construction Company ("Turner"), a New York corporation, to install precast concrete on the Granby Tower construction project in Norfolk, Virginia. Turner had earlier contracted with the project's owner to provide general construction work on the project. The subcontract executed by Turner and Universal incorporated that prime contract by reference.

Like countless other construction ventures since the collapse of the real estate market, the Granby Tower project ultimately fell through in March 2008 when the owner could no longer finance it. By that point, Universal had substantially completed all of its work on the project. Turner, however, had

not paid Universal for any of the work performed, because Turner had not yet been paid by the owner.[1]

When Universal sought payment of $885,507 from Turner for the work it had performed, Turner refused, citing a pay-when-paid provision in the subcontract. Universal then filed suit in the Eastern District of Virginia pursuant to 28 U.S.C. § 1332 (2006), alleging breach of contract and several other claims not germane to this appeal.

Before the district court, Universal alleged that the subcontract, when read in light of Turner's contract with the owner, is "patently ambiguous" as to when Turner was required to pay Universal. Turner, in turn, argued that the language in the subcontract is unambiguous and that other terms in the prime contract are consistent with or support the pay-when-paid clause in the subcontract.

The district court agreed with Turner that the provision, even when viewed in light of the prime contract, is unambiguous and granted summary judgment to Turner on the breach of contract claim. Universal appeals.

## II.

The sole issue raised by Universal's appeal is whether or not the district court correctly found that Universal's contract with Turner contained an unambiguous pay-when-paid clause, which conditioned any payments to Universal on Turner's first receiving payment from the owner. Universal asks us to reverse the district court's judgment in Turner's favor and asks us to follow two, out-of-jurisdiction cases, which support its reading of the contract. We cannot do so, however, because we believe that under Virginia law, the contract

---

[1] We are informed that Turner is currently involved in litigation against the owner seeking payment totaling $13,648,845.00, which includes the amount owed to Universal.

unambiguously reflects both parties' understanding that Universal would only be paid for its work after Turner was paid by the owner. Consequently, we hold that the pay-when-paid clause contained in the Turner-Universal subcontract is enforceable and prevents Universal from demanding payment from Turner unless and until Turner is first paid by the owner.

a.

We review *de novo* the district court's granting summary judgment to Turner. *Long v. Dunlop Sports Group Ams., Inc.*, 506 F.3d 299, 301 (4th Cir. 2007). Because this appeal invokes our diversity jurisdiction, we must apply Virginia state law, just as the forum would have done had the suit been brought in state court. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778, 783 (4th Cir. 1995).

b.

We begin by analyzing the contractual language in both the Turner-Universal subcontract and the Turner-owner general contract against the backdrop of Virginia law. Pay-when-paid clauses are valid in Virginia[2] "where the language of the contract in question is clear on its face." *Galloway Corp. v. S.B. Ballard Constr. Co.*, 464 S.E.2d 349, 354 (Va. 1995). A contractor and subcontractor may create a valid pay-when-paid clause by including in their contract "an express condition clearly showing that to be the intention of the parties." *Id.* (internal quotation marks omitted). On the other hand, Virginia courts will not enforce pay-when-paid clauses if there is an ambiguity in the contract, which "'exists when language is of doubtful import, admits of being understood in more than one way, admits of two or more meanings, or refers to two or

---

[2]We have previously recognized pay-when-paid clauses' validity under Virginia law. *See Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 724 (4th Cir. 2000).

more things at the same time.'" *Id.* at 355 (quoting *Allen v. Green*, 331 S.E.2d 472, 475 (Va. 1985)).

The parties do not dispute that the pay-when-paid clause in the Turner-Universal contract is facially unambiguous. Indeed, it is hard to see how they could. Article IV of the agreement states in relevant part:

> The obligation of Turner to make a payment under this Agreement, whether a progress or final payment, or for extras or change orders or delays to the Work, is subject to the express condition precedent of payment therefor by the Owner.

J.A. 67.[3] The agreement further states that the amount paid to Universal will be "out of funds received from the Owner." *Id.* Finally, Article II of the subcontract states that the agreement is intended to supplement the agreement between Turner and the owner and that any conflict between the two agreements will be read to impose the greater obligation on the subcontractor. J.A. 66.

Universal argues, however, that the subcontract, which incorporates Turner's contract with the owner by reference, is ambiguous when read as a whole. Universal claims that the Turner-owner contract, which consists of the standard American Institute of Architects ("AIA") provisions, reflects an understanding that Turner would pay Universal before being paid by the owner. Specifically, Universal points to A121 section 6.1.3, which states that the costs for which the owner will reimburse Turner include "[p]ayments made by the Construction Manager to Subcontractors in accordance with the requirements of the subcontracts." J.A. 240. Universal emphasizes the term "payments made," which it claims demonstrates

---

[3]Citations to J.A. __ refer to the Joint Appendix filed by the parties upon appeal.

that Turner and the owner contemplated Turner's paying Universal before invoicing the owner.

As the district court noted, however, this interpretation ignores the remainder of the clause, which indicates that "payments made" are those payments made "in accordance with the requirements of the subcontracts." The district court was therefore correct to find that this clause relates only to the reimbursement *amount*, not to *when* those amounts would be paid. This language does not render the pay-when-paid provision "of doubtful import" or make it capable "of being understood in more than one way," *Galloway*, 464 S.E.2d at 355 (internal quotation marks omitted); rather, it clearly allows the subcontracting parties freedom to contract for when those payments will be made.

Likewise, the district court correctly found that other clauses in the Turner-owner contract contemplate that Turner could pay its subcontractors after first being paid by the owner. AIA document A201 section 9.6.2 directs Turner to pay its subcontractors "upon receipt of payment from the Owner, out of the amount paid to the Contractor on account of such Subcontractor's portion of the Work," and section 9.3.1 requires Turner to submit "requisitions from Subcontractors" with its invoices. Both provisions contemplate the likelihood that the general contractor and subcontractor will enter into a pay-when-paid contract. Though Universal argues that the AIA provides that provisions in A121 should control over provisions in A201 where the two conflict, whether one of the two purportedly conflicting provisions controls is irrelevant where, as here, the two provisions can be comfortably read together. *See Galloway*, 464 S.E.2d at 354 (courts should not find ambiguity or conflict where none exists simply because one party so claims).

c.

Despite the contract's apparent clarity, Universal points to two cases, one from Florida and the other from Missouri,

which support its reading of the contract. In the first case, *OBS Co. v. Pace Constr. Corp.*, 558 So. 2d 404 (Fla. 1990), *superseded by statute in part*, Fla. Stat. § 713.245 (2009), *as recognized in*, *WMS Constr., Inc. v. Palm Springs Mile Assocs., Ltd.*, 762 So. 2d 973 (Fla. Ct. App. 2000), the Florida Supreme Court held that almost-identical provisions in a sub-contract and general contract were ambiguous enough not to enforce the pay-when-paid provision. *Id.* at 406. Likewise, in *MECO Sys., Inc. v. Dancing Bear Entm't*, 42 S.W.3d 794 (Mo. Ct. App. 2001), the Missouri Court of Appeals followed *OBS*' reasoning to interpret another contract containing similar provisions. *Id.* at 807.

Universal contends on appeal that the contractual language in *OBS* and *MECO* is identical to that at issue here and, therefore, that both cases should control the result. We agree that on the record before us these precedents are not easily distinguishable. But because of how unambiguously the contractual language reflects the parties' intent that Turner pay Universal only after being paid by the owner, we believe that the Virginia Supreme Court would not follow *OBS* or *MECO*'s reasoning.

This conclusion is reinforced by a recent Virginia-trial-court opinion, *W.O. Grubb Steel Erection, Inc. v. 515 Granby, LLC*, CL 08-3278 (Va. Cir. Ct. Oct. 16, 2009) (letter opinion), which involves almost identical facts and contractual language to that which we consider here. *W.O. Grubb* dealt with a dispute between Turner and another subcontractor who, like Universal, was not paid for work performed on the Granby Tower project. *Id.* at 1. Like the district court here, the trial court found the contract between Turner and the subcontractor, when viewed in light of Turner's same contract with the owner, to be unambiguous and enforced the pay-when-paid provision. *Id.* at 5. Rather than attempt to distinguish *OBS* and

*MECO*, the trial court simply opted not to follow their holdings after questioning their reasoning. *Id.* at 3.[4]

Because we are bound to follow Virginia law, we must follow the Virginia trial court's lead in the absence of any indication that the Virginia Supreme Court would disagree with its holding. And though we do not question *OBS* or *MECO*'s reasoning, we note that both decisions appear to be based on policy concerns that the Virginia Supreme Court likely does not share.

The court in *OBS* made clear that its decision was largely based on what it felt to be Florida's desire to protect subcontractors relative to general contractors. 558 So. 2d at 405-06. *MECO* simply adopted *OBS*' reasoning. 42 S.W. at 807. There is no indication that Virginia or its supreme court shares this policy preference. Quite the contrary. In *Galloway*, the state's supreme court emphasized that its decision to recognize pay-when-paid clauses was based on its policy preference for "freedom to contract" — an interest which directly conflicts with a paternalistic desire to protect one contracting party over the other. 464 S.E.2d at 354.

Likewise, it is not even clear that the Florida legislature really favored subcontractors' rights to the extent the state supreme court thought in *OBS*. Following that decision, the Florida legislature passed a law making it easier for general contractors to enforce pay-when-paid clauses, at least where payment bonds were at stake. *See WMS*, 762 So. 2d at 977 (explaining application of Fla. Stat. § 713.245). Where the purpose underlying one state's precedent has been so undermined by subsequent legislation and caselaw, we certainly

---

[4]The trial court wrote, in part: "I have read *OBS* . . . and *MECO* . . . and I do not find them at all persuasive. . . . There are some minor differences among the terms of the owner-general contractor contracts in *OBS*, *MECO*, and here upon which I could attempt to distinguish them, but the differences would not justify a reasoned distinction." *Id.*

cannot impute that purpose to another state whose cases and policy statements are directly contrary.

## III.

For the foregoing reasons, we affirm the district court's order granting summary judgment to Turner.

*AFFIRMED*