<u>UNPUBLISHED</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1375**

AAROW EQUIPMENT & SERVICES, INCORPORATED, United States of America for the use and benefit of,

Plaintiff - Appellant,

v.

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.   Anthony J. Trenga, District Judge.   (1:09-cv-00861-AJT-TCB)

Argued:  January 27, 2011                Decided:  March 18, 2011

Before NIEMEYER, DAVIS, and KEENAN, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Michael Jacob Kalish, WALSH COLUCCI LUBELEY EMRICH & WALSH, PC, Prince William, Virginia, for Appellant.   James Dennis Coleman, WATT, TIEDER, HOFFAR & FITZGERALD, LLP, McLean, Virginia, for Appellee.  **ON BRIEF:** Eugene Andrew Burcher, WALSH COLUCCI LUBELEY EMRICH & WALSH, PC, Prince William, Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal concerns an action brought by a subcontractor against a surety under the Miller Act (the Act), 40 U.S.C. §§ 3131 through -3134. Under the Act, before a general contractor is awarded a contract by the federal government in an amount greater than $100,000, the general contractor is required to obtain a "payment bond" "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract." 40 U.S.C. § 3131(b)(2). The Act provides a cause of action, such as the one asserted here, permitting a subcontractor to file suit seeking payment from a surety on a payment bond when the subcontractor has not been paid by the general contractor within 90 days of completing the subcontractor's work. 40 U.S.C. § 3133(b)(1). For the reasons that follow, we vacate the district court's award of summary judgment in favor of the surety and remand the case for further proceedings.

I.

We review the facts in the light most favorable to Aarow, the non-moving party in the district court. Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). In 2007, Syska Hennessy Group Construction, Inc. (Syska) was awarded a contract (the prime contract) by the United States government (the

2

government) to construct a training facility for the District of Columbia Army National Guard at Fort Belvoir, Virginia (the project). Syska served as the general contractor on the project and obtained a payment bond, as required by the Miller Act, from Travelers Casualty and Surety Company of America (Travelers). Syska awarded Aarow Equipment & Services, Inc. (Aarow) a subcontract, which set forth the "work" that Aarow was required to perform on the project.

Section 11.1 of the subcontract stated that Syska may "make changes in the [w]ork covered by this [s]ubcontract," and that any changes must be made in writing. The subcontract also provided that Aarow must submit in writing to Syska any claims for changes in the price or payment due under the contract. According to the subcontract, any such change in price or payment to Arrow "shall be made" "only to the extent that" Syska is entitled to relief from the government, and payment to Aarow shall be equal to Aarow's share of any adjustment to the prime contract.

When changes to the "work" under the subcontract were made, Aarow generally submitted the proposed cost of the change to Syska, and Syska issued a "change order" to the subcontract. Aarow's "work" described in the subcontract included several categories of responsibilities, including "earthwork" relating to water distribution and drainage. During Aarow's performance

3

of this "earthwork," the government determined that the "erosion control plan" Aarow was implementing was "not up to standard[s]." Aarow ceased working until it received new erosion plan "drawings," which required the construction of sedimentary ponds and other water management measures (the pond work).

Aarow and Syska agreed that the pond work was not included in the "work" defined in the subcontract. In September 2007, Aarow submitted a proposal of $402,500 to Syska for the pond work. Syska directed Aarow to perform the pond work, but did not issue a "change order" for the pond work at that time. Aarow completed the pond work, with the understanding that Syska would issue a "change order" at some point in the future.

Upon Syska's determination that the pond work was not included in the scope of the prime contract,[1] Syska asked that the government agree to a "modification" of the prime contract.[2] Syska requested that Aarow wait to submit its invoice for the

---

[1] The record does not contain a copy of the prime contract, and there were no depositions taken during discovery in this case of the government officials involved with the prime contract.

[2] According to deposition testimony provided by a Syska employee, a "modification" is essentially the same as a "change order," except that the prime contract was amended by a "modification," while the subcontract was amended by a "change order."

pond work until after the government issued a "modification" to the prime contract and Syska issued a "change order" to the subcontract.

Several months later, neither a "modification" nor a "change order" had been issued. Nevertheless, Aarow submitted an invoice to Syska for the completed pond work. Syska instructed Aarow to use a billing procedure that would allow Syska to pay Aarow for the pond work even though a "change order" had not been issued. This billing procedure required Aarow to list the pond work under a "line item" designated for certain "finishing" work on the project that had not yet been completed.[3] According to Syska, the government had authorized this billing procedure while Syska's "modification" request was pending.

After Aarow complied with this different billing procedure in accordance with Syska's directions, Syska submitted a similar invoice to the government identifying the pond work as "finishing" for a "three-story building." The government paid Syska $484,980, which included the invoice in the amount of $402,500 submitted by Aarow, plus a fee representing Syska's "normal markup." Syska, in turn, paid Aarow $402,500 for the

---

[3] The "finishing" work was included in the "work" described by the subcontract.

pond work. Syska advised Aarow that after Syska received a "modification" and issued a "change order," Aarow could reallocate the funds received for the pond work to the proper "line item." Shortly after the government paid Syska the requested amount of $484,980, the government determined that the pond work was included in the prime contract. Accordingly, the government denied Syska's request for a "modification" of the prime contract based on the government's construction of the prime contract's terms.

The government later withheld several payments to Syska to recover the funds previously paid for the pond work. In response, Syska withheld payment from Aarow for other work completed by Aarow between May 2009 and June 2009.

On July 1, 2009, Aarow sent Syska a letter stating that Syska had a "significant outstanding and past balance due," and that Aarow would stop work on the project at the end of the week unless payment was made. When Syska did not submit payment to Aarow under the terms of the demand, Aarow ceased work on the project.

On July 17, 2009, Syska sent Aarow a letter notifying Aarow that it was in default of the subcontract for failing "to proceed with the work" according to the project schedule. In that letter, Syska instructed Aarow to correct and complete specific alleged defaults. Aarow did not return to work on the

6

project or otherwise attempt to cure the alleged defaults. On July 23, 2009, Syska sent another letter to Aarow stating that because Aarow had not cured the defaults, Syska was terminating the subcontract as provided in Section 12.1 of that agreement.

Section 12.1 of the subcontract stated, in relevant part:

> If, in the opinion of [Syska], [Aarow] shall at any time . . . fail in any respect to prosecute the Work according to the current schedule. . . then, after serving three (3) days written notice, unless the condition specified in such notice shall have been eliminated within such three (3) days, [Syska] may at its option . . . terminate the Subcontract for default . . . . [Aarow] shall not be entitled to receive any further payment until the Work shall be fully completed and accepted by [the government].

Under Section 12.2 of the subcontract, however, if Syska wrongfully terminated the subcontract, Syska would be liable for "the reasonable value of [the] Work performed by [Aarow] prior to [Syska's] wrongful action."

With regard to payment, the subcontract required that Syska pay Aarow monthly, provided that Syska already had received payment from the government. This "pay-when-paid" provision stated, in relevant part:

> Conditioned upon the satisfactory progress of [Aarow], compliance with the documentation requirements of this Subcontract, and [Syska] has received payment from the [government] THEN [Syska] will make monthly payments to [Aarow]. [Aarow] acknowledges and agrees that in the event payment is not made to [Syska] for any reason . . . [Aarow] shall look exclusively to [the government] for payment of any and all funds due under this Contract. [Aarow] further agrees that the delay in payment or nonpayment by the [government] does not

7

create any separate obligation of [Syska] to pay regardless of the extent of the delay.

In its complaint filed against Travelers, the surety on Syska's payment bond, Aarow asserted that Syska breached the subcontract by failing to pay Aarow for several months. Aarow sought from Travelers the sum of Aarow's past-due invoices to Syska, in the amount of $484,870.71.

In response, Travelers filed an answer and a motion for summary judgment. Aarow opposed the motion, and the parties filed a series of briefs addressing numerous issues. In December 2009, the district court held a hearing on the motion for summary judgment.

In its pleadings and during the hearing, Travelers asserted two primary arguments in support of its motion. Travelers first maintained that because the terms of the "pay-when-paid" provision in the subcontract were clear and the government did not pay Syska for several months, Syska did not breach its payment obligation to Aarow under the subcontract. Travelers thus contended that Syska properly terminated the subcontract under Section 12.1 based on Aarow's failure to perform, and that Aarow was not entitled to payment under the terms of Section 12.1. Travelers argued alternatively that even if Syska wrongfully had terminated the subcontract, Syska paid Aarow more

than Aarow was due under the subcontract and, therefore, Aarow was not entitled to additional payment.

Two months after the hearing, but before the district court entered its judgment, Travelers requested leave to supplement its motion for summary judgment to discuss a new decision issued by this Court. In that supplemental pleading, Travelers argued that under this Court's decision in Universal Concrete v. Turner Construction Co., 595 F.3d 527 (4th Cir. 2010), "pay-when-paid" provisions are valid defenses in a breach of contract action when the terms of such provisions are unambiguous.

Aarow filed a brief in response, arguing that the holding in Universal Concrete did not establish a new principle of law. (J.A. 649.) Aarow also cited in its supplemental brief the "prevention doctrine," a principle of contract law establishing that one who prevents the performance or the happening of a condition to his performance may not take advantage of that condition. See Barnhill v. Veneman, 524 F.3d 458, 474 (4th Cir. 2008). Aarow contended that this doctrine barred Syska from relying on the "pay-when-paid" provision of the contract because Syska was partially at fault for the government's failure to make the requested payment to Syska. Aarow argued that Syska's fault was demonstrated by its failure to obtain the appropriate "modification" to the prime contract, and by its failure to issue a "change order" to the subcontract for the pond work.

9

The district court entered an order permitting both parties to supplement the record with these pleadings.

Three weeks later, the district court entered an order granting summary judgment in favor of Travelers. In its memorandum opinion, the district court held that because the subcontract contained an enforceable "pay-when-paid" provision, and because it was undisputed that the government failed to pay Syska for several months, Aarow was unable to "justify its [w]ork stoppage based on Syska's failure to pay Aarow." Notably, the district court did not address Aarow's prevention doctrine argument.

The district court concluded that Syska's "termination for default" was proper under Section 12.1 of the subcontract based on Aarow's failure to complete its work under the subcontract. Accordingly, the district court held that Aarow was not owed payment under the subcontract and that, therefore, Travelers had "no payment obligation to Aarow." Aarow filed a timely appeal in this court.

II.

We review the district court's award of summary judgment de novo. See S.C. Green Party v. S.C. State Election Comm'n, 612 F.3d 752, 755 (4th Cir. 2010). Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when

10

the moving party "shows that there is no genuine dispute as to any material fact" and when the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (construing former Rule 56(c) of the Federal Rules of Civil Procedure).

A.

Aarow argues on appeal that the district court erred in failing to apply the prevention doctrine in determining whether Travelers was entitled to judgment as a matter of law.  Aarow asserts that Syska was responsible for the government's failure to make the requested payment under the prime contract.  Therefore, according to Aarow, a jury should determine whether Syska breached the terms of the subcontract by failing to pay Aarow for the work it had completed.

In response, Travelers argues that the district court properly granted summary judgment in its favor.  Initially, Travelers contends that Aarow's prevention doctrine argument was not asserted timely and should not be considered in the resolution of this appeal.  Addressing the merits of Aarow's argument, Travelers asserts that because the government withheld payment from Syska, the terms of Syska's subcontract with Aarow permitted Syska to withhold the requested payment to Aarow.

11

Travelers therefore maintains that, as a matter of law, Travelers did not owe any payment to Aarow under the bond because Syska complied with the terms of the subcontract and Aarow wrongfully abandoned the project. We disagree with Travelers' arguments.

We find no merit in Travelers' assertion that Aarow failed to preserve its prevention doctrine argument in the district court. Although Aarow used the term "prevention doctrine" for the first time in a later-filed supplemental pleading, the district court accepted that supplemental pleading and included it in the record three weeks before the court rendered its judgment. Furthermore, in Aarow's initial brief opposing summary judgment, Aarow set forth the factual predicate for its prevention doctrine argument by asserting that Syska directed Aarow to complete the pond work before issuing a "change order" for that work, and that Syska acted in bad faith by attempting to "back charge" Aarow for the pond work. Thus, we conclude that Aarow's prevention doctrine argument was presented adequately to the district court and was not, as Travelers argues, articulated for the first time on appeal. See Evans v. Metro. Life Ins. Co., 358 F.3d 307, 310 n.2 (4th Cir. 2004) (explaining that although appellant's argument was not raised in district court until oral argument on the motion for summary judgment, the argument was preserved for appellate review).

12

B.

We turn to examine the present record to determine whether Travelers was entitled to judgment as a matter of law at the summary judgment stage of the proceedings. Based on Aarow's argument before the district court, we give particular consideration to the evidence before the district court bearing on the issue of the prevention doctrine.

Under the prevention doctrine, when a general contractor materially contributes to the failure of a condition limiting the duty to perform under a contract, the general contractor may not rely on that failure as a defense to its performance of its contractual obligations. See Moore Bros. Co. v. Brown & Root, Inc., 207 F.3d 717, 725 (4th Cir. 2000). In Moore Brothers, we applied the prevention doctrine in a dispute involving a "pay-when-paid" provision in a subcontract. There, in response to two subcontractors seeking payment for completed work, the general contractor asserted as a defense the "pay-when-paid" condition in the subcontract and the owner's failure to pay the general contractor. Id. at 724-25.

We affirmed the district court's award of summary judgment in favor of the subcontractors because the record established that the general contractor materially contributed to the owner's failure to pay. Id. at 725-26. Thus, we concluded that the general contractor was liable to its subcontractors for

13

payment notwithstanding the "pay-when-paid" provision in the subcontract. Id. at 725. Applying our analysis in Moore Brothers to the present case, we consider whether a jury reasonably could find that Syska's actions materially contributed to the government's failure to pay Syska under the prime contract, thereby preventing Travelers from relying on the "pay-when-paid" condition in the subcontract in defense of Syska's failure to pay Aarow.

Travelers maintains that the government directed the method of billing for the pond work and that, therefore, Syska was not responsible for the government's refusal to pay Syska when the government later determined that the billing for the pond work was improper. In support of its position, Travelers relies on the deposition testimony of Robert F. Geremia, Syska's vice president in charge of construction, who stated that the government had "instructed my people in the field to bill for some [finishing] work that actually wasn't done."

Aarow, however, asserts that Syska's actions materially contributed to the government's failure to make the payment at issue. Aarow points to evidence in the record that Syska directed Aarow to perform the pond work even though Syska had not issued a "change order" or received a "modification" to the prime contract. The record also contains evidence that Aarow completed the pond work, relying on Syska's promise that a

14

"change order" was forthcoming. However, when Syska did not obtain a "change order," Syska directed Aarow to remove its invoice references to "sediment ponds and associated work," and to categorize the pond work as "finishes" for a "three-story building," which had not yet been constructed.

Based on these facts, a jury reasonably could return a verdict for Aarow if the jury concluded that Syska's actions, in directing Aarow to perform the pond work before issuing a "change order," and in agreeing to employ an arguably improper billing procedure that obscured the expanded scope of the "work" under the subcontract, materially contributed to the government's later decision to withhold certain payments to Syska. If Syska's actions materially contributed to the government's decision, Travelers could not rely on the "pay-when-paid" provision of the subcontract to excuse Syska's failure to pay Aarow for its work performed under the subcontract. See Moore Bros., 207 F.3d at 725.

We are not persuaded by Travelers' assertion that it was entitled to summary judgment based on Geremia's testimony that the government instructed Syska to employ the questionable billing procedure. In essence, Travelers seeks to absolve Syska of any responsibility for the arguably improper billing procedure because "the project owner told us to do it." The allocation of responsibility for the billing practices, however,

15

raises credibility issues and other issues of fact that are matters for a jury's consideration. Therefore, we hold that Travelers was not entitled to summary judgment on the issues whether Syska breached the subcontract and whether Aarow was entitled to payment from Travelers under the bond.[4]

For these reasons, we conclude that the district court erred in granting summary judgment in favor of Travelers. Accordingly, we vacate the district court's judgment and remand the case for further proceedings consistent with this opinion.

VACATED AND REMANDED

---

[4] Based on our holding, we do not address Aarow's remaining argument regarding the issue whether the district court erred in relying on letters from Syska's counsel to Aarow relating to Syska's termination of the subcontract. We also need not address Aarow's contention that the district court's judgment violated the policy underlying the Miller Act.

16