**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 11-1584**

———————————

JENNIFER R. SCOTT,

                Plaintiff - Appellee,

        v.

MERCK & COMPANY, INCORPORATED,

                Defendant - Appellant.

———————————

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Benson Everett Legg, District Judge.
(1:09-cv-03271-BEL)

———————————

Argued:  September 21, 2012         Decided:  November 27, 2012

———————————

Before DUNCAN, AGEE, and DIAZ, Circuit Judges.

———————————

Reversed and remanded by unpublished opinion.   Judge Agee wrote
the opinion, in which Judge Duncan and Judge Diaz concurred.

———————————

**ARGUED:** Raymond Charles Baldwin, SEYFARTH SHAW, LLP, Washington,
D.C., for Appellant.   Andrew Howard Baida, ROSENBERG, MARTIN &
GREENBERG, LLP, Baltimore, Maryland, for Appellee.   **ON BRIEF:**
Reenah L. Kim, SEYFARTH SHAW, LLP, Washington, D.C., for
Appellant.

———————————

Unpublished opinions are not binding precedent in this circuit.

AGEE, Circuit Judge:

In this diversity action, Merck & Company, Inc., ("Merck") appeals a $555,000.00 jury verdict in favor of its former employee Jennifer R. Scott, who alleged that her termination of employment by Merck constituted a breach of contract under Maryland law.[1]  For the reasons set forth below, we reverse the district court's judgment and remand the case for entry of final judgment in favor of Merck.

I.

In 1992, Merck hired Scott as a pharmaceutical sales representative.  The parties agree that she was hired as an at-will employee.  During the final years of Scott's employment, Scott's relationship with her direct supervisor, William Liberato, deteriorated.  Liberato gave Scott negative performance reviews, warned that if she did not improve her performance "appropriate next steps" would be taken, and eventually placed Scott on a "performance improvement plan" to monitor her work.  Scott challenged Liberato's instructions on more than one occasion and eventually reported him to Merck's

_____

[1] As this is an action with federal jurisdiction by virtue of diversity of citizenship, we apply the law of the relevant state, Maryland, to the state law contract claims.  See Universal Concrete Prods. v. Turner Constr. Co., 595 F.3d 527, 529 (4th Cir. 2010).

2

Office of Ethics for conduct that she believed violated Merck's ethical standards. Merck terminated Scott's employment in January 2008.

Scott originally filed this breach of contract case in the Circuit Court for the City of Baltimore, Maryland, but Merck removed the case to the United States District Court for the District of Maryland. In her complaint, Scott alleged that policy statements issued by Merck subsequent to the date of her employment limited Merck's ability to terminate her employment at will.[2] Scott also claimed that Merck's decision to terminate

---

[2] Scott asserts that two Merck policy statements created an enforceable contractual obligation that Merck employees would not be terminated from employment for raising good faith business practice complaints. First, she points to Merck's Code of Conduct, which states: "Any employee or third party who raises a business practice issue will be protected from retaliation." (J.A. 21.) In addition, the Code of Conduct provides that "[t]he fact that an employee has raised concerns in good faith, or has provided information in an investigation, cannot be a basis for denial of benefits, termination, demotion, suspension, threats, harassment or discrimination." (J.A. 45.) Second, she relies on a policy statement ("Policy 57") issued by Merck's Office of Ethics that states:

> Retaliation and threats of retaliation against employees who raise concerns, or against individuals who appropriately bring important workplace and business issues to the attention of management, are serious violations of Merck's values and standards and will not be tolerated.
>
> . . . .
>
> All directors, officers[,] and employees are strictly prohibited from engaging in retaliation or retribution, or threats of retaliation . . . .

(Continued)

3

her employment breached that obligation because it retaliated against her for having raised concerns about Liberato to the Office of Ethics.

After discovery, Merck moved for summary judgment on the basis that Scott was an at-will employee who could be terminated at any time and for any reason, and thus could not bring a claim for breach of her employment contract. Particularly relevant to this appeal, Merck asserted that neither the Code of Conduct nor Policy 57 created contractual obligations because they were general statements of policy rather than "definite and specific" declarations of benefits. In addition, Merck argued that Scott could not justifiably rely on the non-retaliation policy statements as creating a contractual right to non-retaliation in light of specific disclaimers that Scott's employment was at will and that any policy statements did not create employment obligations or contractual rights. (J.A. 55.)

The district court denied Merck's motion for summary judgment, concluding that the non-retaliation policy statements Merck had issued subsequent to Scott's hiring were "sufficiently

. . . .

Anyone who is involved in an act of retaliation against a reporting employee or other individual will be subject to appropriate disciplinary action.

(J.A. 52.) (Collectively "non-retaliation policy statements.")

4

specific and definite to constitute an enforceable contract term" under Maryland law.[3]  (J.A. 307.)  In addition, the court concluded there was sufficient evidence from which a jury could

---

[3] The district court found no ambiguity in any of the contractual language either party relied on (i.e., the Code of Conduct, Policy 57, the employment application, or the Manager's Policies).  And, in reviewing that language, the district court concluded:

> Scott's reliance on Merck's non-retaliation policies as part of her employment contract was reasonable. The promise that employees will be protected from retaliation for reporting business practice issues in good faith, and that such reporting may not be the basis for demotion, denial of benefits, or termination, is sufficiently specific and definite to constitute an enforceable promise under the Staggs framework.  Though Merck's policy is in some sense aspirational, in that it states that retaliation is "unacceptable" and "will not be tolerated," it also promises an identifiable and unambiguous benefit: employees will not be fired as a result of good-faith whistle blowing.
>
> . . . The policy in this case is far closer to those specific promises found to be enforceable than to the general aspirational statements in other cases. . . .
>
> Given the unambiguous nature of the non-retaliation policy, the disclaimers that Merck relies upon are insufficient to defeat Scott's reasonable expectation that Merck intended to limit its ability to terminate her for retaliatory reasons.  Unlike other cases where courts have found disclaimers effective in defeating contract formation, this case involves an attempt by Merck to disavow, through use of broad disclaimers, a specific benefit that clearly implicates grounds for termination.

(J.A. 303-04.)

5

conclude that Merck breached those contractual provisions in terminating Scott.  The case proceeded to trial.

The jury returned a verdict in favor of Scott, finding that Merck breached its employment contract by terminating her in retaliation for raising a good faith business practice issue to Merck's Office of Ethics.  Scott was awarded $555,000.00 in consequential damages.  The district court denied Merck's motion for judgment as a matter of law or, alternatively, a new trial, adopting its prior rationale regarding the existence of a contractual limitation on Merck's ability to terminate Scott's employment.  It also held that the evidence adduced at trial supported both the jury's verdict and the damages award.

Merck noted a timely appeal, and we have jurisdiction under 28 U.S.C. § 1291.

II.

Merck raises four issues on appeal by challenging the district court's threshold determination that Scott's employment was anything other than at will, raising two issues related to the scope and conduct of the trial, and contending that the evidence did not support the verdict in favor of Scott.  Because we agree with Merck that the district court erred in concluding that the non-retaliation policy statements altered the terms of

Scott's at will employment in light of clear disclaimers to the contrary, we need only address the first issue.

We review the district court's denial of a motion for judgment as a matter of law de novo. See PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 119-20 (4th Cir. 2011) (citation omitted).[4] Contract interpretation is also subject to de novo review. Frahm v. United States, 492 F.3d 258, 262 (4th Cir. 2007).

Moreover,

> [a]s a court sitting in diversity, we have an obligation to interpret the law in accordance with the Court of Appeals of Maryland, or where the law is unclear, as it appears that the Court of Appeals would rule. To forecast a decision of the state's highest court we can consider, inter alia: canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions.

Wells v. Liddy, 186 F.3d 505, 527-28 (4th Cir. 1999) (internal citations omitted). In addition, "[a]n opinion of an intermediate appellate court is persuasive in situations where the highest state court has not spoken . . . ." Sanderson v. Rice, 777 F.2d 902, 905 (4th Cir. 1985) (footnote omitted).

---

[4] If "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [an] issue," judgment as a matter of law is appropriate. Fed. R. Civ. P. 50(a); see also Gregg v. Ham, 678 F.3d 333, 341 (4th Cir. 2012).

III.

Maryland follows the common law principle of employment at will, meaning that an employment contract of indefinite duration may be terminated by either party at any time. Adler v. Am. Standard Corp., 432 A.2d 464, 467 (Md. 1981). Maryland recognizes a limited exception to this principle whereby subsequent "policy statements that limit the employer's discretion to terminate an indefinite employment or that set forth a required procedure for termination of such employment may, if properly expressed and communicated to the employee, become contractual undertakings by the employer that are enforceable by the employee." Staggs v. Blue Cross of Md., Inc., 486 A.2d 798, 803 (Md. Ct. Spec. App. 1985); see also Fournier v. U.S. Fid. & Guar. Co., 569 A.2d 1299, 1301-05 (Md. Ct. Spec. App. 1990). Maryland courts have "caution[ed] that not every statement made in a personnel handbook or other publication will rise to the level of an enforceable covenant. . . . [G]eneral statements of policy are no more than that and do not meet the contractual requirements for an offer." Staggs, 486 A.3d at 804 (internal quotation marks and citation omitted).

In applying the so-called Staggs exception, Maryland courts have been clear that "an employer may avoid contractual liability by any terms which clearly and conspicuously disclaim contractual intent." Castiglione v. Johns Hopkins Hosp., 517

8

A.2d 786, 793 (Md. Ct. Spec. App. 1986). This is so because "[t]he purpose of the Staggs exception to the at will doctrine is to protect the legitimate expectations of employees who have justifiably relied on manual provisions precluding job termination except for cause. Justifiable reliance is precluded where, as in the case at hand, contractual intent has been expressly disclaimed." Id. at 793-94 (emphasis added) (internal citation omitted). Thus, Maryland's courts have refused to apply the Staggs exception where the employer "expressly negated, in a clear and conspicuous manner, any contract based upon the handbook for a definite term and reserved the right to discharge its employees at any time." Id. at 793; see also Fournier, 569 A.2d at 1304 (holding that language stating that employment was at will precluded employee from "justifiably rely[ing] on any indication in the employee manual that his employment would only be terminated after certain procedures were followed by the [employer]").

Having reviewed the relevant documents in the record, as well as Maryland case law on point, we conclude that the district court's analysis was incorrect. It erred in failing to grant Merck's motion for summary judgment and, subsequently, Merck's motion for judgment as a matter of law. The district court began by reviewing whether the policy statements Scott cited created an "unambiguous" binding contractual promise, and

9

upon finding that they had done so, then rejected the disclaimers Merck relied on as "insufficient to defeat" those promises. Cf. supra n.2. That approach misconstrues the salient analysis under Maryland law.

An employee must show both that the policy statement limited the employer's discretion to terminate the employment at will and that the employee justifiably relied on that statement. The presence of a clearly expressed disclaimer precludes the employee from proving the element of justifiable reliance on a claim of breach of contract regardless of how readily the employee could satisfy the other part of the analysis. Put another way, "[t]he disclaimer of any contractual intent . . . on the part of [the employer] effectively bar[s] [the employee from demonstrating justifiable] reliance." Fournier, 569 A.2d at 1304. The district court incorrectly reversed this analysis. It is the unambiguous nature of the disclaimer that Maryland courts have found to defeat an employee's reliance on policy statements, not the other way around. That is, proof of the clear disclaimer renders moot any claim that the employer's discretion was otherwise limited by a policy statement.

The issue before the court, then, is whether the language Merck points to clearly and conspicuously precludes justifiable reliance on the provisions Scott contends modified her employment contract. See Fournier, 569 A.2d at 1303-04;

10

Castiglione, 517 A.2d at 793-94. Merck identifies two provisions as being "disclaimers" of a contractual intent that Scott's employment would be anything other than at will. The first is a statement in Scott's employment application, in which Scott acknowledged: "I understand that I have the right to terminate my employment at any time and for any reason and that Merck & Co., Inc. retains a similar right." (J.A. 63.) The second is the Manager's Policies, which state, in relevant part: (1) "[e]mployment at Merck is at-will, which means that employees are not hired for a specific duration of time and either Merck or the employee may sever the employment relationship at any time, for any reason with or without notice," and (2) "[n]one of the Company's policies, procedures, or practices should be viewed as creating promises or any contractual rights to employment for a specific duration of time or to any specific benefits of employment."[5] (J.A. 55.)

The plain language of these policies demonstrates that Merck clearly and conspicuously informed Scott that her employment was at will. Indeed, the precise analysis in Castiglione can be applied to this case:

---

[5] Nearly identical language is located in Merck's Manager Policy E1 and Policy E5. For simplicity, we refer to them collectively as "Manager's Policies."

11

> The disclaimer language in the [employment application and Manager's Policies] does not indicate any intent to limit the discretion of [Merck] to discharge [Scott] only for cause, as was the case in <u>Staggs</u>. Moreover, [the disclaimers] actually served to reserve the right[] of [Merck to discharge Scott at will]. Finally, unlike the situation in <u>Staggs</u>, in this case [Merck] expressly negated, in a clear and conspicuous manner, any contract based upon the [non-retaliation policy statements] and reserved the right to discharge its employees at any time.

517 A.2d at 793.[6]

The disclaimers in the case at bar thus precluded Scott from being able to show that she justifiably relied on the language in the Code of Conduct or Policy 57 as creating any contractual rights (assuming that they could be so construed) limiting Merck's ability to terminate her employment at will.[7] The fact that the disclaimers appear in different locations from

---

[6] We have considered Scott's additional arguments that the provisions Merck points to are legally insufficient to constitute "disclaimers" under Maryland law. We do not agree. The provisions at issue in the case at bar are closely analogous to those in <u>Castiglione</u> and <u>Fournier</u>, in that they affirmatively declare that Scott's employment was at will, and that she could be terminated for any reason.

[7] On appeal, Scott persists in asserting that the Manager's Policies do not apply to her, an argument that she made to the district court as well. The district court rejected Scott's argument, explicitly finding that the policies' plain language made them applicable to her. Scott brought no cross-appeal as to this specific finding. (J.A. 300.) The district court did not clearly err in its finding, as the Manager's Policies state that they apply to "<u>all</u> Merck & Co., Inc. employees based in the U.S. not covered by a collective bargaining agreement." (J.A. 55, 57 (emphasis added).) Scott was such a Merck employee.

the Code of Conduct and Policy 57 policy statements is not material. The Maryland Court of Special Appeals considered and rejected that precise argument as to placement of the disclaimer in Fournier. 569 A.2d at 1304 ("The fact that in this case the disclaimer appeared in the application for employment rather than in the [policy] handbook itself is not a material distinction."). Merck clearly and conspicuously disclaimed any limitation on its ability to terminate Scott's employment at will.[8] It further stated that policy statements such as the ones Scott relies on should not be viewed as creating any contractual rights and obligations. Scott therefore cannot show that her termination constituted a breach of contract, for her employment was at will.[9] Accordingly, the district court erred in denying Merck's motion for judgment as a matter of law.

---

[8] We observe that troubling consequences may flow from a blanket rule permitting an employer's broad disclaimer to nullify preemptively any employment guarantees provided for in an employer's later-in-time policy statements. Cf. Toussaint v. Blue Cross & Blue Shield of Mich., 292 N.W.2d 880, 895 (Mich. 1980) ("Having announced the policy, presumably with a view to obtaining the benefit of improved attitudes and behavior and improved quality of the work force, the employer may not treat its promise as illusory."). Whether a clear and conspicuous disclaimer will always suffice under Maryland law to defeat an employer's policy statements guaranteeing certain employment protections to its employees is not an issue we need to reach here, and is in any case more properly determined by that state's courts and legislature.

[9] We do not take any position on whether the policy statements Scott relies on were, on their own, sufficient under
(Continued)

IV.

    For the aforementioned reasons, we conclude that the district court erred, as a matter of Maryland law, in its threshold ruling that Scott's employment had been modified from its original at will status.  The case should not have proceeded to trial because there is not otherwise a legally sufficient evidentiary basis upon which Scott could prevail.  Merck was entitled to judgment as a matter of law.  We therefore reverse the district court's judgment and remand the case for the district court to enter final judgment in favor of Merck.

REVERSED AND REMANDED

---

Maryland law to modify the nature of Scott's employment.  Our holding concludes only that Scott could not justifiably rely on any such policy statements in light of Merck's disclaimers.

14